**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, INC., et al., Defendants.**

No. 94–2202–JWL.

United States District Court,
D. Kansas.

Feb. 3, 1997.

Kenneth B. McClain, Gregory Leyh, Nicholas E. Mebruer, Humphrey, Farrington & McClain, Independence, MO, for David Burton.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Co., Inc.

James D. Griffin, James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke, New York City, for the American Tobacco Co.

## MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

Before the court is the plaintiff's motion to compel the defendant R.J. Reynolds Tobacco Co. ("RJR") to produce thirty-three Council for Tobacco Research ("CTR") special project documents. (Doc. 214) RJR claims that all of the documents are protected by either the attorney-client privilege or work product immunity. Plaintiff claims that the crime-fraud exception applies making the documents subject to disclosure, notwithstanding the claim of privilege. United States District Judge John W. Lungstrum originally found, based upon the memoranda of the parties, that the documents were protected by the attorney-client privilege and attorney work product immunity, but referred the motion to the undersigned United States Magistrate Judge after finding that plaintiff had sustained his burden to establish the applicability of the crime-fraud exception to the privilege and that it was necessary to conduct an *in camera* review of the thirty-three allegedly privileged CTR documents to determine whether any of them indicates that the defendant knew during the relevant time period that nicotine was addictive and failed to disclose that information despite the CTR's public representation that it would make such disclosures to the public. The court has now completed the *in camera* review and is prepared to rule on the motion.

Preliminarily, the court notes that Judge Lungstrum specifically held that, based upon the evidence available to him at the time of his consideration, the defendant had made the necessary showing to assert the attorney-client privilege and the work product immunity as to the CTR documents. The court has now had the opportunity to review the documents and to make a determination of the applicability of the attorney-client privilege and attorney work product immunity based upon a review of the documents rather than the statements by counsel. The court relies on the statement of the law as to attorney-client privilege and work product immunity set forth in Judge Lungstrum's Memorandum and Order, filed May 1, 1996, and supplements that as necessary for the court's rulings herein.

The court has been furnished and has reviewed, in addition to the subject documents, a memorandum submitted by RJR, *in camera,* explaining the nature of each of the thirty-three documents and arguing RJR's position on the scope of the court's review at this time. While the court has considered the information provided by RJR in the *in camera* memorandum as to the nature of the thirty-three documents, the court has also reviewed the privilege log prepared and at-

tached to the response to the motion to compel. There are inconsistencies in the various submissions by RJR, and when found, the court has looked first to the subject documents, second to the privilege log and third to the *in camera* memorandum, in descending order. The court has also considered the memoranda filed by the parties in support of and opposition to the motion to compel.

The court has carefully reviewed all thirty-three documents. RJR seems to believe and argues that when an attorney is somehow referenced within a document or generates a document, attorney-client privilege or work product immunity must protect disclosure of the subject document. Such is simply not the law.

The attorney-client privilege protects confidential communications between an attorney and client where legal advice is sought. K.S.A. 60–426(a). *State v. Maxwell,* 10 Kan. App.2d 62, 691 P.2d 1316 (1984). It is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Its purpose is to encourage complete and candid communication between a client and his attorney and "thereby promote broader public interests in the observance of law and administration of justice." *Id.* It protects "communications" between an attorney and client, not facts. *Id.* Not every communication between an attorney and client is privileged. Rather, the privilege exists only for those confidential communications which necessarily occur in the course of requesting or giving legal advice. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). *See also United States v. Olano,* 62 F.3d 1180 (9th Cir.1995). The privilege protects communications with in-house counsel as well as outside attorneys. *Upjohn,* 449 U.S. at 390, 101 S.Ct. at 683. The privilege is to be narrowly construed. *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records,* 697 F.2d 277 (10th Cir.1983).

The privilege does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected, not the fact that there has been communication. *United States v. Kendrick,* 331 F.2d 110, 113 (4th Cir.1964); *Howell v. United States,* 442 F.2d 265 (7th Cir.1971). Protection is afforded only to confidential communications seeking or rendering legal advice. *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990). Only when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed, is the privilege properly invoked. *Hercules Incorporated v. Exxon Corporation,* 434 F.Supp. 136 (D.C.Del.1977). A distinction is made between a lawyer providing business or technical advice rather than legal advice. *Oil Chemical and Atomic Workers International Union v. American Home Products,* 790 F.Supp. 39 (D.P.R.1992). Legal advice must predominate for the communication to be protected. *Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990). The privilege does not apply where the legal advice is merely incidental to business advice. *In re Brand Name Prescription Drugs Antitrust Litigation,* 1995 WL 354268 (N.D.Ill.1995). Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege. *United States Postal Service v. Phelps Dodge Refining Corporation,* 852 F.Supp. 156 (E.D.N.Y.1994). There is also a distinction between a conference with counsel and a conference at which counsel is present. The mere presence of counsel at a meeting does not make all communications during the meeting privileged. *Oil Chemical and Atomic Workers International Union v. American Home Products,* 790 F.Supp. 39 (D.P.R.1992).

A general description of the work performed by the attorney is not protected by the privilege. *United States v. Olano,* 62 F.3d 1180 (9th Cir.1995). Acts or services performed by an attorney during the course of the representation are not within the privilege. They are not communications. *United States v. Brickey,* 426 F.2d 680 (8th Cir. 1970). The subject matter of meetings with an attorney, the persons present, the location

of the meetings, or the persons arranging the meetings are not protected by the privilege. *United States v. Pappadio,* 346 F.2d 5 (2nd Cir.1965).

Information is not privileged simply because it comes from an attorney. *United States v. Defazio,* 899 F.2d 626 (7th Cir.1990); *In re Brand Name Prescription Drugs Antitrust Litigation,* 1995 WL 354268 (N.D.Ill. 1995). The mere fact that one is an attorney does not render everything he does for or with the client privileged. *United States v. Bartone,* 400 F.2d 459 (6th Cir.1968). Minutes of meetings attended by attorneys are not automatically privileged and business documents sent to attorneys are not automatically protected. *Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987). When raised as to documents pre-existing, given by the client to the attorney to aid in legal representation, the privilege protects only material that would have been privileged in the hands of the client. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *See also Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records,* 697 F.2d 277 (10th Cir.1983).

Some courts have been influenced by whether the work being performed at the time of the communication required the services of an attorney or could be performed equally well by a non-lawyer. *Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990); *Oil Chemical and Atomic Workers International Union v. American Home Products,* 790 F.Supp. 39 (D.P.R.1992). The fact that the client chose to channel the work through an attorney rather than perform the work with non-legal personnel does not provide the basis for a claim of privilege. *U.S. ex rel. Stone v. Rockwell International Corporation,* 144 F.R.D. 396 (D.Colo.1992). When an attorney is merely acting as a conduit for information, the privilege does not apply. *Id.*

Drafts of documents to be submitted to third parties, although prepared by counsel, are not generally privileged. Submission of the document to the third party removes any cloak of privilege. *United States Postal Service v. Phelps Dodge Refining Corporation,* 852 F.Supp. 156 (E.D.N.Y.1994).

The work product doctrine is codified in Fed.R.Civ.P. 26(b)(3) and protects documents and tangible things revealing the attorney's mental processes which would otherwise be discoverable, prepared in anticipation of litigation. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The party claiming the immunity afforded under the doctrine must establish that the material is (i) a document or tangible thing, (ii) prepared in anticipation of litigation (iii) by or for a party or its representative. *Jones v. Boeing Co.,* 163 F.R.D. 15 (D.Kan.1995). To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation. The court must consider the factual context of each case in determining whether the document can fairly be said to have been prepared in anticipation of litigation. *Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987). Notwithstanding the prospect of litigation, documents prepared in the ordinary course of business are not afforded immunity. *Id.* The primary or motivating purpose for the preparation of the document must be to assist in pending or anticipated litigation. *Sackman v. Liggett Group, Inc.,* 920 F.Supp. 357 (E.D.N.Y.1996). The doctrine protects an attorney's thought processes, litigation strategies and trial tactics. Summaries of business transactions, whether or not prepared by an attorney, not specifically prepared in anticipation of litigation, are not entitled to work product immunity. *Matter of Fischel,* 557 F.2d 209 (9th Cir.1977). When documents are prepared for dissemination to third parties, neither the document itself, nor preliminary drafts, are entitled to immunity. Documents which the client does not reasonably believe will remain confidential are not protected. *United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1984). A document is not protected by work product immunity simply because it was prepared by an attorney. It is not entitled to immunity by the fact that a party might contemplate that at some time in the future, litigation might arise. Simply the prospect of future litigation does not assure work product immunity. The mere contingency of litigation is not determinative. Routine investigation

of its product by a party, even as to possible claims, is not sufficient to immunize investigative reports. *Scott Paper Company v. Celcote Company, Inc.,* 103 F.R.D. 591 (D.C.Me.1984).

The court now considers the documents in issue.

 **Tabs 1–9** are inter-office memoranda on RJR letterhead related to research and development. Tab 1 is a memorandum from G.R. Di Marco to G.H. Long with the subject being identified as "R & D Weekly Highlights." Tabs 2–7 and 9 are memoranda to Dr. G.R. Di Marco related to weekly highlights on research and development. Tab 8 is an undated "Status Report on Key R & D Programs." All of the documents in Tabs 1–9 were produced to the plaintiff with redactions for claimed privileged or protected material. There is no claim that any of the documents were prepared by counsel or as a communication to or from counsel, however, the material in the redactions contain references to counsel. RJR objects to the production of the redacted portions, except those contained in Tab 3, on the basis of attorney-client privilege. The objection as to the redacted portion of Tab 3 is on the basis of work product immunity.

**Tab 1** includes a redaction on page 7957 which reports the activities of a representative of Phillip Morris as well as those of outside counsel. It does not include a communication between attorney and client. Activities of counsel are not protected by the privilege.

**Tab 2** includes a redaction on page 4395 relating the fact of submission of a draft work statement to in-house counsel for legal input. The fact of submission of a document to counsel for legal input is not a protected communication.

**Tab 3** includes a redaction on page 4006 which reports attendance at a meeting by two employees with Environmental Engineering and Legal. The subject and purpose of the meeting are disclosed as well as the subject matter of activities of in-house counsel. The document is not protected by work product immunity. The reference to the fact of a meeting with counsel and the subject matter of that meeting reported in a memorandum are not protected by work product immunity. The subject matter of the meeting was related to the legal implications of SARA and was not related to litigation. Finally, the document for which the immunity is claimed was not prepared in anticipation of litigation by or for a party's attorney and there has been no claim of such.

**Tab 4,** at page 1155, is a handwritten notation which reports a communication of in-house counsel. While it is unclear to the court whether legal advice or business advice is the subject of the notation, the court assumes that legal advice is involved resolving the issue in favor of protection. Therefore, the document is protected by the attorney-client privilege.

**Tab 5** includes two redactions. At page 5344, the memorandum reports action by the Committee of Counsel, "approval" of a study. It also reports the projection of timing of initiation of the study. Action of the committee is not a "communication" between an attorney and client. The subject of the redacted notation relates to action by counsel, a procedural matter. It is not legal advice. Attorney-client communications are not involved. At page 5345, there is a report concerning the state of mind of in-house counsel concerning his desire to complete particular policies and procedures. A protected communication is not involved. To the extent the memorandum reports a communication by counsel, indirectly, it does not report legal strategies or thought processes. Legal advice is not the subject of the communication.

**Tab 6** appears, for the court's purpose, to be identical to Tab 5. The redacted portions are identical.

**Tab 7,** at page 6294, reports a meeting with in-house counsel, the purpose of the meeting, a generalized description of document(s) provided at the meeting, and an agreement reached between those present, all being related to RJR's pursuit of certain contracts and the sharing of information. Again, the substance of communications with counsel is not the subject of the redaction. The fact that an agreement has been reached or exists is not a protected

communication. Legal advice is not the subject of the reported action. The redaction relates to facts about the meeting, none of which are protected by the attorney-client privilege.

**Tab 8** contains multiple redactions. The first redaction, at page 8851, reports the activities of the Tobacco Institute ("TI") attorneys as related to a third party. Activities between attorneys and third parties are not protected communications. Legal advice is not the subject of the redaction. The second redaction, also on page 8851, reports the agreement of R & D to participate in a study of New York City restaurant air quality, at the request of a non-lawyer with TI and outside counsel. The primary thrust of the redaction has nothing to do with an attorney-client communication. It reports an action of R & D. While it includes reference to the action being taken, in part, at the request of an attorney, that request was jointly made by TI and outside counsel. Further, the substance of the communication is not disclosed and the communication appears to have nothing to do with rendering legal advice. On page 8853, the redaction reports that certain legislation was reviewed with Environment law personnel. The subject matter of a consultation with an attorney is not privileged. The redaction also includes a report of R & D activities related to satisfying regulatory requirements. The activities reported are not attorney-client communications. The redaction at page 8854 reports delivery of a document to the law department. The redaction includes a statement of the requirements of North Carolina law related to providing a list of chemicals to local fire protection authorities. The author's report of the requirements of North Carolina law is not an attorney-client communication. The act of delivery of a document, even directly to an attorney, is not a protected communication.

**Tab 9,** at page 4696, relates to the subject of a meeting with the law department, the requirements of SARA, and an agreement reached as a result of or during the meeting. It does not report communications to or from counsel. Agreements reached as a result of legal advice are not protected communications. The subject of a meeting with counsel is not a communication with counsel and is not protected by the attorney-client privilege.

None of the redactions in Tabs 1 through 9 contain references to the addictiveness of nicotine. Notwithstanding, none of the redactions, except that noted in Tab 4, contain protected attorney-client communications. Tab 3 is not protected by work product immunity. Consequently, the documents in Tabs 1–3, 5–9 should be produced in their entirety.

**Tabs 10–15.** Tab 10 is a letter dated February 5, 1981, from Shook, Hardy & Bacon, outside counsel for various tobacco companies, to in-house as well as outside counsel for various tobacco companies, including RJR related to the "Perry/Sterling Project." Tab 11 is a letter dated February 5, 1979, from Shook, Hardy & Bacon to in-house and outside counsel for various tobacco companies related to a research proposal from Dr. Duncan E. Hutcheon. Tab 12 is a letter dated July 26, 1980, from outside counsel for RJR to in-house and outside counsel for various tobacco companies related to a proposed study by Dr. Carl Seltzer. Tab 13 is a letter dated August 13, 1987, from Shook, Hardy & Bacon to in-house and outside counsel for various tobacco companies related to a study by Dr. William H. Gutstein. Tab 14 is a memorandum dated February 14, 1980, from Jacob & Medinger, outside counsel for RJR, to in-house and outside counsel for various tobacco companies related to a study by Dr. Russell Stedman. Tab 15 is a letter from Shook, Hardy & Bacon, dated June 8, 1982, to in-house and outside counsel for various tobacco companies related to a research proposal of Dr. Richard Gorlin.

█ RJR claims that the documents at Tabs 10–15 are protected by the attorney-client privilege. The correspondence is devoid of legal advice or any suggestion of such advice. The documents reflect no communications from the client. Each document relates to an active or proposed study being conducted by a third party concerning the

effects of tobacco. The activities reported and the communications in the documents are those which could have been performed by company personnel, a scientist, or any non-lawyer knowledgeable in the subject matter. The activities and the advice given are that of a business and not a legal nature. The reported activities are not tied to pending litigation and make no reference to legal issues. They contain no legal strategy. The subject matter is scientific data. The studies are ongoing scientific studies related to tobacco and health issues generally. The documents do not contain communications protected by the attorney-client privilege, notwithstanding that they were prepared by attorneys and contain communications to the clients. The correspondence is of a procedural nature and reports either the activities of third parties or the status of a study and the third party's request for funding of its study. A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys, whether in-house or outside counsel. There is no suggestion that any of the correspondence relates to legal issues being considered by the attorneys. There are no references to the addictiveness of nicotine in any of the documents.

■ **Tabs 16–18** are memoranda which purport to be reviews of reports on research projects concerning smoking and health dated either March 7 or 8, 1968. RJR claims that the documents are protected by work product immunity. RJR represents that the reviews were prepared by scientists who assisted the legal department at the request of in-house counsel for RJR for another RJR employee, outside the legal department. Legal advice is not the subject of the memoranda. Legal strategies are not involved. The memoranda were prepared by one non-lawyer who assisted the legal department for another non-lawyer outside the legal department. The fact that an attorney requests that a document be prepared does not necessarily cloak the document with work product immunity. Preparation of a review of scientific literature by a scientist assisting the legal department for another employee of the client, whether inside or outside the legal department, does not cloak the document with work product immunity. The documents are not tied to litigation, pending or anticipated. The summaries make no reference to pending or anticipated legal issues. While there is a representation that the scientist that prepared the memoranda assisted the legal department, there is no suggestion by RJR that the summaries were prepared for or related to pending or anticipated litigation. While not determinative, a factor which the court considers significant is that the document was prepared for an employee outside the legal department and no connection is shown as to that employee's relationship to any type of legal activity. There are no references to the addictiveness of nicotine in any of the documents.

■ **Tab 19** is a memorandum dated February 20, 1980, prepared by a scientist assisting the legal department for another RJR employee, reporting and commenting upon research related to glycoprotein in cigarette tobacco and tobacco smoke. Both attorney-client privilege and work product immunity are claimed. Again, no representation is made that the recipient of the memorandum was a member of the legal department. The document is similar in nature to those in Tabs 16–18 and the court's analysis there applies here as it relates to the work product immunity claimed. In addition, while the document involves a communication between a non-lawyer employee of the legal department and an employee of RJR outside the department, it does not contain nor refer to legal advice. It was not prepared by an attorney. The document is a summary of an article. The expertise required for the work performed is not of a legal nature, and there is no legal advice being solicited or given. Its purpose is for use by another RJR non-legal employee. There is no evidence that the summary was prepared for purposes related to legal advice sought or offered. There are no references to the addictiveness of nicotine in the document.

■ **Tab 20** is a report written by Rodger L. Bick, M.D., a consultant for Jacob & Medinger, outside counsel for RJR, and sent to Jacob & Medinger for review, related to tobacco glycoprotein. RJR claims that it is

protected by work product immunity. The report is a critique of scientific studies by other scientists and contains no communications related to pending or anticipated litigation. There is no evidence that the report was to be used in pending or anticipated litigation. The fact that Dr. Bick was a consultant for a law firm representing one of the tobacco companies does not alone cloak his report with work product immunity. There are no references to the addictiveness of nicotine in the report.

■ **Tab 21** is a document dated September 25, 1967, which purports to be minutes of a meeting of the Industry Technical Committee with representatives from the Council for Tobacco Research. Attorney-client privilege is claimed. The minutes were drafted by an RJR employee and sent to in-house counsel. There is no indication in the minutes that an attorney was present at the meeting or that legal advice was sought or obtained during the meeting. The preparation of minutes of a non-legal meeting, followed by the transmission of a copy of the minutes to in-house counsel, does not cloak the minutes with the attorney-client privilege. There is no evidence that the minutes were a communication to counsel for the purpose of rendering legal advice. There is no evidence that the purpose for transmission of the minutes to counsel was for any purpose other than keeping counsel informed. Such does not render the document protected by attorney-client privilege. Transmission of a document to an attorney, whether or not requested by the attorney, does not provide attorney-client protection to the document. Notwithstanding, the court finds that the document may contain evidence of knowledge by the defendant in 1967 and, prior thereto, that nicotine was addictive.

■ **Tabs 22–24** contain reports of medical conferences, prepared by an RJR employee who assisted the legal department, at the request of the legal department. Work product immunity is claimed. While the comments on the medical conference were submitted to in-house counsel, there is no evidence that the documents were prepared for pending or anticipated litigation. Further, the documents make no reference to litigation or issues related to litigation and simply summarize a series of medical workshops, apparently attended by the preparing employee. Notwithstanding, Tab 23 may contain evidence of knowledge by the defendant in 1981 of the addictive qualities of nicotine.

■ **Tabs 25–30** are drafts of a response to the Report of the Tobacco Group of the European Economic Community Consumer Consultative Committee, "Tobacco and the Health of the Consumer," dated July 29, 1978, prepared by outside counsel for RJR. RJR claims the documents are protected by the attorney-client privilege. The documents were prepared for and transmitted to employees of several tobacco companies, foreign and domestic, as well as in-house and outside counsel for such companies. While the documents were prepared by an attorney, they were not prepared in the course of rendering legal advice. The preparation of the draft response was to rebut a report rendered by the EEC's Consumer Consultative Committee related to smoking and disease. It could have been prepared by scientists, tobacco industry non-legal personnel, or others with access to the non-legal literature cited in the response. On its face, the document was intended for public relations rather than legal purposes. The document is a response to the CCC's report. The document makes no reference to legal issues or the rendering of legal advice to any of the tobacco companies. While RJR claims herein that the documents are drafts of a memorandum for various attorneys of tobacco companies, the transmittal memorandum reflects that the subject document is a response to the report with drafts being revised after input from attorneys for various tobacco companies. While drafts prepared for a client with the purpose of obtaining legal advice may be protected by attorney-client privilege, drafts of documents to be submitted to third parties are not so protected. There are no references to the addictiveness of nicotine in the drafts.

■ **Tab 31** contains handwritten notes of a meeting of an industry trade association, dated October 1, 1985, by an RJR in-house attorney. The meeting was attended by sci-

entists, in-house and outside counsel for tobacco companies and concerned scientific research and regulatory issues. Attorney-client privilege is claimed to protect the notes. The notes relate to the status of various studies being conducted on tobacco related issues. The meeting was not related to seeking or giving legal advice. Attorney-client communications are not involved. The subject matter did not relate to litigation or legal issues. The fact that the notes are those of in-house counsel does not alone protect them. There are no references to the addictiveness of nicotine in the notes.

■ **Tab 32** contains handwritten notes by an RJR employee of a tobacco industry meeting, dated November 15, 1978, related to smoking and health issues. RJR claims that the notes reflect opinions of outside attorneys for Phillip Morris and Lorillard and in-house counsel for Brown & Williamson. RJR contends that the notes are protected by attorney-client privilege. The subject of the meeting, as reflected by the notes, appeared to be educational and to include a discussion of research strategies to counter the views of outsiders as to the use of CTR in research, as well as the credibility of CTR. The meeting obviously was directed toward public relations and public image issues. No legal advice is reflected in the notes. The court also finds that the notes may contain evidence which may be relevant to the issue of RJR's knowledge of the effects of nicotine and RJR's actions or contemplated actions related thereto.

■ **Tab 33** contains handwritten notes of an RJR in-house attorney relating to an alleged regulatory matter. Work product immunity is claimed. The subjects actually covered by the notes relate to a conversation with an FTC representative and reports a visit with him and the setting up of a lab by a group of tobacco companies for certain testing and prospective studies. The events recited in the notes are unrelated to litigation or anticipated litigation, whether regulatory or otherwise. There are no references to the addictiveness of nicotine in the notes.

The court also notes the decision of *Sackman v. Liggett Group, Inc.*, 920 F.Supp. 357 (E.D.N.Y.1996), wherein the court held that the work product doctrine was not applicable to documents related to CTR Special Projects as the motivation behind the special projects was public relations rather than research for use in litigation. A review of the documents to which work product immunity is claimed herein confirm the finding of the *Sackman* court. The documents for which RJR seeks work product immunity are totally devoid of any reference to any specific litigation, to the defense of litigation in general, or to legal issues.

In summary, the court finds that the documents contained in Tabs 21, 23 and 32 may contain evidence that RJR knew, during the relevant time period, that nicotine was addictive. The court finds that the redaction in Tab 4 is protected by the attorney-client privilege. None of the other documents are protected by either the attorney-client privilege or work product immunity and consequently, all documents, except those in Tab 4, should be produced. The motion to compel (doc. 214) is granted in part and overruled in part as set forth herein.

Copies of this order shall be mailed to all counsel of record for the parties.

IT IS SO ORDERED.