KANSAS WASTEWATER, INC.,
et al., Plaintiffs,

v.

ALLIANT TECHSYSTEMS, INC.,
Defendant and Third–Party
Plaintiff,

v.

Chemical Recovery Corp., et al.,
Third Party–Defendants.

No. CIV.A. 02–2605–JWL.

United States District Court,
D. Kansas.

June 5, 2003.

Elizabeth Drill Nay, Scott A. Wissel, Thomas M. Martin, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Plaintiffs.

Carrie E. Josserand, Lathrop & Gage L.C., Overland Park, KS, William F. Ford, Jr., Lathrop & Gage L.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Defendant's Motion to Compel (doc. 7). For the reasons set forth below, the Court will grant the motion.

### I. Background Information

This case is the re-filing of a lawsuit captioned *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.,* Case No. 01–2236–JWL. The original lawsuit was filed by Kansas Wastewater, Inc. ("KWWI") on May 16, 2001. On May 31, 2002, that case was dismissed without prejudice on motion by KWWI. The Court's order dismissing the case directed that any discovery already completed, including depositions, could be used in any re-filed action.[1]

KWWI and its sister corporation, Wastewater Treatment, Inc. ("WTI") filed the instant action on December 5, 2002. The action arises out of a Facility Use Agreement ("FUA") entered into between KWWI and Defendant. Plaintiffs allege that KWWI entered into the FUA as an agent for WTI. Pursuant to the FUA, WTI was to operate and improve a wastewater treatment facility on property managed by Defendant. Plaintiffs sue Defendant for breach of the FUA and for misrepresentations that allegedly in-duced Plaintiffs to enter into the FUA. Defendant has asserted a counterclaim for breach of the FUA based on KWWI's claimed refusal to pay Defendant the full amount of rent allegedly owed Defendant under the FUA.

Defendant took the deposition of Thomas McNally on May 31, 2002, in the original lawsuit. Mr. McNally is the principal of both KWWI and WWI. During his deposition, Mr. McNally declined to answer certain questions, asserting that to do so would reveal privileged attorney-client communications. Defendant now moves to compel Mr. McNally to answer those questions, arguing that the information requested does not infringe upon any attorney-client communications. In the alternative, Defendant asks the Court to issue an order prohibiting Plaintiffs from introducing evidence on the topics covered by the deposition questions.

### II. Analysis

#### A. The Attorney–Client Privilege

##### 1. Choice of law

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity actions.[2] The Court's jurisdiction in this case is based on diversity. Accordingly, Kansas law defines the scope of the attorney-client privilege in this case.[3]

##### 2. The applicable law regarding the attorney-client privilege

K.S.A. 60–426 sets forth the attorney-client privilege and the exceptions thereto. The essential elements of the attorney-client privilege are as follows:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the

---

1. *See* doc. 101, Case No. 01–2236–JWL.

2. *Frontier Ref., Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 699 (10th Cir.1998).

3. The Court notes, however, that there is no real conflict between federal and Kansas law regarding the attorney-client privilege. *See Simmons Foods, Inc. v. Willis,* No. 97–4192–RDR, 2000 WL 204270, at *3 n. 2 (D.Kan. Feb. 8, 2000);

*Hiskett v. Wal–Mart Stores, Inc.,* 180 F.R.D. 403, 405 (D.Kan.1998). Thus, whether the Court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies, and the Court may, at times rely on federal case law when it appears consistent with the Kansas law of privilege. *See Simmons Foods,* 2000 WL 204270, at *3 n. 2.

course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosure by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[4]

█ It is well established that the party objecting to discovery on the basis of the attorney-client privilege bears the burden of establishing that the privilege applies.[5] To carry that burden, the party must make a "clear showing" that the asserted privilege applies.[6] Moreover, this Court is required to strictly confine the privilege "within the narrowest possible limits consistent with the logic of its principle."[7] The privilege should "be extended no more broadly than necessary to effectuate its purpose."[8] Its purpose is to encourage full and frank communication between attorneys and their clients.[9] Moreover, the privilege exists to protect not only the giving of legal advice to the client but also to protect the giving of information to the lawyer to enable him/her to give appropriate and informed advice.[10]

### B. Application of the Privilege to the Questions Posed

#### 1. Questions regarding the status of KDHE proceedings against KWWI and WTI

The first line of questions at issue deals with the status of certain Kansas Department of Health and Environment ("KDHE") proceedings against KWWI and WTI. Defendant's counsel, William Ford, posed the following questions to Mr. McNally during his deposition:

Q: While we are on it, what is the current status of the KDHE action to termi-

nate Kansas Waste Water's NPDES permit?

A: Currently?

Q. Yes.

A: From what I hear, we are in negotiations to resolve that.

Q. So is it your understanding that is has not yet been resolved?

MS. NAY (Counsel for Plaintiffs): You know, I'm going to object—

MR. FORD: I'm just asking for his understanding.

MS. NAY: Wait a minute. I'm going to instruct him not to respond if it was with communications with counsel.

A: That's correct. I cannot respond because my communications have been with my lawyer.

Q. (by Mr. Ford) Do you have any understanding of the current status of the action to decertify the laboratory permit for Wastewater Treatment, Inc.?

MS. NAY: Same objection. If it requires you to reveal communications with counsel, then I instruct you not to respond.

A. Yes. I can't—all my communication has come through the lawyer.[11]

Defendant asserts that the status of the KDHE proceedings is not privileged simply because the information came to Mr. McNally through Plaintiffs' attorney. Defendant argues that to be privileged, the communication between the client and attorney must be made for the purpose of obtaining or rendering legal advice. Furthermore, Defendant asserts that the privilege may not be assert-

---

4. *Simmons,* 2000 WL 204270, at *2–3 (quoting *State v. Maxwell,* 10 Kan.App.2d 62, 63, 691 P.2d 1316 (1984); K.S.A. 60–426 (1994)).

5. *See, e.g., McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 680 (D.Kan.2000); *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995); *Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 425, 997 P.2d 681 (2000).

6. *McCoo,* 192 F.R.D. at 680; *Cypress Media,* 268 Kan. at 425, 997 P.2d 681.

7. *IMC Chem., Inc. v. Niro Inc.,* No. 98–2348–JTM, 2000 WL 1466495, at *10 (D.Kan. July 19,

2000) (quoting *Cypress,* 268 Kan. at 418, 997 P.2d 681).

8. *Great Plains Mut. Ins. Co. v. Mut. Reins. Bureau,* 150 F.R.D. 193, 196 (D.Kan.1993).

9. *Upjohn Co. v. U.S.,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

10. *Id.* at 390, 101 S.Ct. 677.

11. McNally Depo., pp. 155–156, Ex. A attached to doc. 8.

ed to a question that merely asks Mr. McNally "for his understanding" as to whether the proceedings have been resolved. Plaintiffs counter that the motion to compel as to this line of questioning must be denied for two reasons. First, Plaintiffs assert that Mr. McNally had already answered the question regarding the current status of the KDHE action, and, thus, the follow-up question, "So is it your understanding that it has not yet been resolved?" was objectionable. Second, Plaintiffs contend that the follow-up question and the question following it called for Mr. McNally to reveal privileged communications between Plaintiffs' counsel and himself regarding confidential settlement negotiations between KWWI and the KDHE.

■ The Court disagrees with Plaintiffs. As to the question regarding the current status of the KDHE proceeding, Plaintiffs' counsel never objected at the deposition to it being "asked and answered." Pursuant to Federal Rule of Civil Procedure 32(d)(3)(B), "errors and irregularities occurring at the oral examination . . . in the form of the questions or answers . . . and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition." Any objection by Plaintiffs that the question was already asked and answered was thus waived.

■ As to the privilege issue, the Court does not find that Plaintiffs have met their burden to show that either of the two follow-up questions posed by Defendant's counsel called for Mr. McNally to divulge attorney-client communications.[12] The first follow-up question asked Mr. McNally to reveal what

knowledge, if any, he had about the status of the KDHE action to terminate KWWI's NPDES permit. The question did not ask Mr. McNally to reveal the substance of any communication between himself and counsel. It asked only for "his understanding" as to whether the action had been resolved and called for a simple yes or no answer. Similarly, the second follow-up question asked Mr. McNally to reveal what knowledge he had regarding the status of another KDHE action, an action to decertify the laboratory permit for WTI. Again, Mr. McNally was not asked to divulge the substance of any communication between himself and Plaintiffs' counsel, but only to respond yes or no as to whether he had any understanding of the status of the action.

It is well established that a party may not withhold relevant facts from disclosure simply because they were communicated to, or learned from, the party's attorney. In *Upjohn Company v. United States,*[13] the Supreme Court distinguished between disclosure of *underlying facts* and disclosure of privileged *communications.* The Court held that "[t]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing."[14] The Court explained: "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney."[15]

Similarly, the privilege does not protect *facts* that an attorney conveys to his client.[16]

---

**12.** The Court presumes for purposes of its decision that Mr. McNally is the proper corporate representative to assert the attorney-client privilege on behalf of both Plaintiffs. None of the parties has raised this as an issue.

**13.** 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

**14.** *Id.* at 395–96, 101 S.Ct. 677 (1981) (emphasis in original) (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962)).

**15.** *Id.* at 396, 101 S.Ct. 677.

**16.** *Henry v. Champlain Enter., Inc.,* 212 F.R.D. 73, 91 (N.D.N.Y.2003) (attorney-client privilege

"does not protect the client's knowledge of the relevant facts, whether they were learned from counsel or facts learned from an attorney from independent sources."); *Thurmond v. Compaq Computer Corp.,* 198 F.R.D. 475, 483 (E.D.Tex. 2000) ("[A]ttorney-client privilege does not reach facts within the client's knowledge, even if the client learned those facts through communications with counsel."); *B.C.F. Oil Refin., Inc. v. Consol. Edison Co. of N.Y.,* 168 F.R.D. 161, 165 (S.D.N.Y.1996) ("attorney-client privilege simply does not extend to facts known to a party that are central to that party's claims, even if such facts came to be known through communications with counsel"); *Standard Chartered Bank, PLC v. Ayala Int'l Holdings (U.S.), Inc.,* 111 F.R.D. 76,

"The privileged communication and the facts recounted within it are two different things."[17] Thus, a client does not normally lose the privilege as to communications with his attorney merely because he testifies during his deposition or at trial to the same events or facts that his/her lawyer discussed with him.[18]

In short, the discoverability of a communication depends on its nature, rather than its source. A fact is discoverable regardless of how a deponent came to possess it.

Here, defense counsel's questions were directed at eliciting factual details regarding Mr. McNally's knowledge about the status of the KDHE actions to terminate KWWT's NPDES permit and to decertify WTI's laboratory permit. Counsel's questions did not seek to discover the substance of confidential communications between Mr. McNally and Plaintiffs' attorney regarding those KDHE actions. As such, the disputed questions fall outside the prohibition against the disclosure of privileged communications.

In sum, the Court finds that Plaintiffs have failed to meet their burden to show that the information sought by these questions is privileged. Accordingly, the Court will grant the motion to compel as to these questions, and, to the extent Mr. McNally is capable of answering these questions with regard to facts he knows, he shall do so.

> 2. *Questions relating to KWWI's decision not to pay back rent to Defendant*

■ The next line of questioning to which Defendant seeks to compel answers relates to KWWI's decision not to pay back rent to Defendant, rent that Defendant claims Plaintiffs owe Defendant under the FUA. This is the subject of Defendant's counterclaim for breach of the FUA. It is also a part of Defendant's defense to Plaintiffs' claim that Defendant breached the FUA.

The parties have provided the Court with certain background information to place this line of deposition questioning in context. Not surprisingly, the parties provide somewhat different versions of the background facts. As best as the Court can determine, while the FUA was in place, Defendant and Plaintiffs temporarily agreed that Plaintiffs' rent payments under the FUA would be reduced. On June 19, 2002, approximately one month after the first lawsuit was filed, Defendant made demand on Plaintiffs that they resume the full monthly rent payments and that they pay the amounts allegedly past due, i.e., the amounts that had been temporarily reduced.

Defendant's counsel posed the following questions to Mr. McNally relating to this topic:

Q. Does that [document] request Kansas Waste Water to resume full monthly payments of $28,333.33?

A. It is asking, when it was given to me on June 19th 2001, that they wanted us to resume payments of $28,333.33, yes.

Q. Did Kansas Waste Water resume payments in that amount?

A. No, we did not.

Q. Did Kansas Waste Water pay the amount that had accrued and the difference between 7,500 and 28,000 that had accrued up to that point in time?

A. No, we did not.

Q. Why not?

MS. NAY: I'm going to caution the witness not to reveal communications with counsel. If you can answer without revealing communications with counsel, go ahead.

Q. (by MR. FORD): Who made the decision not to pay those amounts?

Ms. Nay: Not—I would caution you—

Q. (by MR. FORD): If those decisions were made by your counsel—

---

80 (S.D.N.Y.1986) (the privilege does not protect facts that an attorney obtains and then conveys to his client; defendant was required to disclose all facts of which it was aware, regardless of whether defendant learned those facts from counsel)

**17.** *U.S. v. Rakes*, 136 F.3d 1, 5 (1st Cir.1998) (citing *Upjohn*, 449 U.S. at 395, 101 S.Ct. 677).

**18.** *Id.*

MS. NAY: No, no, no. It doesn't have to be made by counsel. Your question causes him to reveal communications with counsel, and he doesn't have to answer. Your questions is why—

MR. FORD: Well, now my question is who—

MS NAY: Then who made the decision. If that causes him to reveal communications with counsel, he can't answer that, either.

A. That is correct. In both cases it would reveal communications with my counsel.

Q. (by MR. FORD): Both the questions of who and why the decision was made not to repay those amounts would require you to reveal conversations with counsel?

A. That is—for this letter, yes, it would.

Q. Did Kansas Waste Water make the decision not to repay those amounts?

MS. NAY: Same objection.

A. Again, both for Wastewater Treatment and Kansas Waste Water, they would require me to reveal conversations I had with my lawyers.[19]

To summarize, Defendant seeks to compel Mr. McNally to answer the following three questions: (1) why did KWWI not pay the amount of rent that had accrued and the difference between the $7,500 and $28,000 that had accrued; (2) who made the decision not to pay those amounts; and (3) did KWWI make the decision not to repay those amounts.

Defendant argues that Mr. McNally improperly asserted the attorney-client privilege to those three questions because the privilege applies only to communications between the lawyer and client when the lawyer is acting as a legal advisor to the client.[20] Defendant contends that Plaintiffs' counsel was not acting as a legal advisor but as a

business advisor when counsel apparently advised Plaintiffs regarding payment of the rent. Thus, according to Defendant, those communications were not privileged.[21] Defendant also argues that Plaintiffs may not rely on the attorney-client privilege to refuse to answer these questions. In support of this argument, Defendant asserts that it has pled a counterclaim for payment of the back rent, and, in response, Plaintiffs have alleged hat they acted rightfully in not paying the back rent and that they complied with all provisions of the FUA, including the provision regarding payment of rent. Defendant thus argues that Mr. McNally may not refuse to testify regarding the facts underlying Plaintiffs' defense, i.e., why the decision was made to pay the back rent and who made that decision.

Plaintiffs counter that the communications with counsel regarding payment of the rent occurred after the litigation had been filed and that counsel was acting in a legal capacity when the communications occurred. Plaintiffs also argue that Defendant's counsel effectively withdrew his question as to *why* the decision was made. Plaintiffs assert that before Mr. McNally could answer that question, defense counsel changed the question to ask *who* made the decision not to pay.

The Court will grant the motion to compel as to these questions, although not for the reasons expressly asserted by Defendant. The Court need not decide whether Plaintiffs' counsel was acting as a legal advisor or business advisor when these claimed communications took place or whether they relate to Plaintiff's defense to the counterclaim. This is because the questions posed by defense counsel do not seek information about communications between Plaintiffs' counsel and Mr. McNally but rather the facts underlying Plaintiffs' decision not to pay the back rent. These questions are similar to those questions defense counsel posed regarding the KDHE actions, in that these questions seek

---

**19.** McNally Depo., pp. 273–274, Ex. A attached to doc. 8.

**20.** *See ERA Franchise Sys., Inc. v. Northern Ins. Co.*, 183 F.R.D. 276, 278 (D.Kan.1998) (citations omitted).

**21.** *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D.Kan.1997) (information is not privileged merely because it comes from attorney; communications made in the course of providing business advice to client are not privileged).

to elicit facts and not attorney-client communications. For this reason, the Court does not find that the attorney-client privilege prevents Mr. McNally from answering these questions.

Furthermore, the Court does not find that defense counsel withdrew the question regarding why the decision was made. After some discussion between counsel regarding the assertion of the privilege, defense counsel asked: *"Both the questions of who and why the decision was made not to repay those amounts would require you to reveal conversations with counsel?"* [22] Mr. McNally answered in the affirmative.[23] Thus, it is apparent that defense counsel did not withdraw his question as to why the decision was made to not repay the rent.

In light of the above, the Court will grant the motion to compel as to this line of questioning. To the extent Mr. McNally is capable of answering these questions with regard to facts he knows, he shall do so.

### 3. Question relating to the Agency Agreement between KWWI and WTI

■ Finally, Defendant seeks to compel Mr. McNally to answer a deposition question asking why Mr. McNally drafted an "Agency Agreement" allegedly entered into between KWWI and WTI to document a prior oral agreement. Under the Agency Agreement, KWWI was to act as the agent of WTI for purposes of (1) entering into the lease under which WTI would operate the wastewater treatment facility, and (2) obtaining and holding the permit to operate the facility.

Defense counsel asked Mr. McNally the following questions regarding the Agency Agreement:

Q. When did you draft it [the Agency Agreement, Depo. Exhibit 222]?

MS. NAY: Objection.

A. That I don't remember, when it was drafted.

MS NAY: Lacks foundation.

A. That I don't remember, when we had drafted it

Q. (by MR. FORD) Who is "we"?

A. It would have been myself with my law firm.

Q. For what reason did you draft Deposition Exhibit 222?

MS. NAY: Objection, lacks foundation, and it may cause the witness to reveal communications with counsel. If it does, don't answer.

A. Unfortunately it does, so I unfortunately can't answer it.[24]

Defendant argues that any communications Mr. McNally had with counsel about the reason for drafting the Agency Agreement would not be privileged because the communications were made in the course of counsel acting as a business advisor rather than a legal advisor. Plaintiffs counter that the Agency Agreement speaks for itself and recites the reasons for which it was created. Plaintiffs argue that defense counsel's question was not intended to seek information about the purpose or the effect of the Agency Agreement but rather to learn why Plaintiffs' counsel chose to draft the Agency Agreement.

Again, the Court does not need to decide whether Plaintiffs' counsel was acting as a business advisor or legal advisor when any purported communications about the Agency Agreement took place, as the Court does not find that the deposition question seeks to uncover the substance of any attorney-client communications. The question posed merely seeks a fact—for what reason the Agency Agreement was drafted. That Mr. McNally may have learned of the reason through discussions with counsel does not make the reason itself privileged. The Court will therefore grant the motion to compel as to this question, and, to the extent he is able to do so, Mr. McNally shall answer this question with regard to the facts he knows.

---

**22.** McNally Depo. at p. 274, Ex. A attached to doc. 8 (emphasis added).

**23.** *Id.*

**24.** *Id.* at p. 289.

### C. Summary of Ruling

The Court will grant the Motion to Compel, and, to the extent Mr. McNally is capable of answering these questions with regard to facts he knows, he shall do so. Defendant shall be allowed to reopen the deposition of Mr. McNally, and the deposition shall take place at a mutually agreeable time, after the parties have conducted their Rule 26(f) planning conference.

### III. Award of Sanctions Pursuant to Fed. R.Civ.P. 37(a)(4)(A)

Although Defendant has not requested sanctions, the Court must nevertheless address the issue. Pursuant to Fed.R.Civ.P. 37(a)(4)(A), when a motion to compel is granted:

> [T]he court *shall,* after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that ... the opposing party's ... response or objection was substantially justified, or that other circumstances make an award of expenses unjust.[25]

Pursuant to this rule, the Court may impose sanctions only after it has afforded the parties the "opportunity to be heard."[26] A hearing, however, is not necessary, and the Court may consider the issue of sanctions "on written submissions."[27] Because Defendant did not request Rule 37(a)(4)(A) sanctions in its motion to compel, there have been no "written submissions" on this issue, and no party has received the required "opportunity to be heard."

Accordingly, the Court will order Plaintiffs and/or their attorneys, to show cause, in writing, within *twenty (20) days* of the filing of this Order, why the Court should not require the law firm of Plaintiffs' attorneys [28] to pay the reasonable expenses and fees that Defendant has incurred in making this Motion to Compel. Defendant shall have *eleven (11) days* thereafter to file a response thereto, if it so chooses. In the event the Court determines that sanctions should be imposed, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Defendant has incurred, and for the filing of any related briefs.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (doc. 7) is granted.

**IT IS FURTHER ORDERED** that Plaintiffs and/or their attorneys, shall show cause, in writing, within *twenty (20) days* of the filing of this Order, why the Court should not require the law firm of Plaintiffs' attorneys to pay the reasonable expenses and fees that Defendant has incurred in making this motion to compel. Defendant shall have *eleven (11) days* thereafter to file a response thereto, if it so chooses.

IT IS SO ORDERED.

---

**25.** Fed.R.Civ.P. 37(a)(4)(A) (emphasis added).

**26.** *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 697 (D.Kan.2000) (citing Fed.R.Civ.P. 37(a)(4)).

**27.** *Id.* (citing Advisory Committee Notes to the 1993 Amendments to Rule 37(a)(4)).

**28.** To the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct. *McCoo,* 192 F.R.D. at 697. The sanctioning of a party, as opposed to the party's counsel, "requires specific findings that the party was aware of the wrongdoing." *Id.* The Court has no evidence that Mr. McNally or Plaintiffs were responsible for the assertion of the attorney-client privilege, and a review of the deposition testimony reveals that it was counsel who directed Mr. McNally not to respond to the questions based on the attorney-client privilege. Thus, in the event the Court does award sanctions, the sanctions will not be imposed against Plaintiffs themselves. Moreover, the sanctions, if any, shall be imposed against the *law firm* rather than the *individual attorneys* representing Plaintiffs. *See id* at n. 7 (holding law firm rather than individual attorneys responsible for payment of fees and expenses awarded under Rule 37(a)(4)); *see also* Kansas Rule of Professional Conduct 5.1 (partners or shareholders in law firm are responsible for making reasonable efforts to assure that the firm's lawyers conform to the rules of professional conduct).