**In re RFD, INC., Debtor.**

**Bankruptcy No. 95–22366.**

United States Bankruptcy Court,
D. Kansas.

Aug. 14, 1997.

---

Chris W. Henry, Payne & Jones, Chtd., Overland Park, KS, Charles W. German, Rouse, Hendricks, German, May & Shank, P.C., Kansas City, MO, for Security Bank of Kansas City.

Kurt Stohlgren, Norman E. Beal and Robert E. Maclin, Hillix Brewer Hoffhaus Whittaker & Wright, Kansas City, MO, for National Tour Assn., Inc.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

In the course of document production under a Fed. R. Bankr.P.2004 Order, Security Bank of Kansas City (the "Bank") mistakenly delivered privileged documents to counsel for National Tour Association, Inc. ("National Tour"), and the Kansas Attorney General. Security Bank seeks a protective order to reverse the disclosure. The Court grants the Motion for Protective Order.[2]

---

1. Security Bank of Kansas City appears by its attorney, Chris W. Henry of Payne & Jones, Chartered, Overland Park, Kansas, and Charles W. German of Rouse, Hendricks, German, May & Shank, P.C., Kansas City, Missouri. National Tour Association, Inc. appears by its attorneys, Kurt Stohlgren, Norman E. Beal and Robert E. Maclin of Hillix Brewer Hoffhaus Whittaker & Wright, Kansas City, Missouri. Attorney for the debtor does not appear.

2. The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has

RFD, Inc., sponsored travel tours throughout the world, using direct mail to market its business. National Tour Association, Inc., a trade group, counts RFD, Inc., among its members. National Tour issued customers of RFD a consumer protection plan that obligated National Tour to reimburse those customers for deposits they lost when RFD took bankruptcy.

To the extent National Tour pays for lost deposits under the protection plan, it is a creditor of RFD. It therefore has an interest in examining the status of its bankruptcy claim as well as those of RFD's customers. Allegedly, through its advertising, RFD advised its customers to send advance travel payments directly to Security Bank in a form payable to the Bank. National Tour believes the customers of RFD were lead to believe their deposits would be held in trust by Security Bank and would be used solely for the customers' own travel arrangements. National Tour also believes the Bank played a role in having customer deposits transferred into RFD's general operating account to buoy RFD's failing business. Before RFD filed bankruptcy, National Tour had been requesting an opportunity to examine Security Bank's records relating to its dealings with RFD.

After RFD, Inc. filed its Chapter 7 petition on November 22, 1995, RFD's customers complained to the Kansas Attorney General that they had lost deposits made for transportation and lodging. Robert Hiatt, an Assistant Attorney General in the Consumer Affairs Division of the Kansas Attorney General's office, conducted an investigation of the complaints. During his investigation, he contacted Security Bank, requesting access to RFD's records. Chris Henry, the Bank's counsel, was negotiating with Mr. Hiatt about his request when National Tour decided to seek a formal examination.

On May 24, 1996, National Tour moved for and obtained an *ex parte* Order for a Rule 2004 examination of a Security Bank representative familiar with the RFD account. The order directed Security Bank to produce

documents relating to its business with RFD. Upon receipt of the order, Chris Henry agreed that all such documents would be produced on June 3, 1996, and the examination of a bank official would take place on June 4, 1996. Mr. Henry decided to invite Mr. Hiatt to participate in the discovery to save duplication of effort.

### Chris Henry's Review of Security Bank's Files

The day before the document production set for June 3, 1996, Chris Henry read the files reflecting Security Bank's transactions with RFD over a period of approximately 10 years. His purpose was to identify bank records protected from disclosure by the attorney-client privilege, the work product rule, or the Federal Regulations covering confidential bank records.

The Bank's RFD files consisted of 15 to 20 folders that were four to five inches thick. Each folder contained numerous documents held between dividers. The documents were attached to the files with fasteners threaded through holes punched at the tops of the pages. Not wishing to disturb the continuity of the file contents, Mr. Henry decided to mark the selected documents and have Susan Egmatic, a bank employee, remove them from the files before delivery to examining counsel.

Therefore, as he read the file documents, Mr. Henry attached "binder clips" to each communication he determined was legally protected. Since many of the file documents were already paper-clipped together, Mr. Henry believed that binder clips would be appropriately distinguishable from the paper clips because they were more obtrusive and less likely to fall off the selected records. After Mr. Henry had made his selections, Susan Egmatic removed from the files the documents bearing binder clips before allowing National Tour's counsel and Mr. Hiatt to examine the files on June 3, 1996.

### Disclosure to National Tour Association and Kansas Attorney General

On June 3, 1996, National Tour's attorneys, Robert Maclin and Norman Beal, and

jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

Assistant Attorney General Hiatt inspected the sanitized files in a small office on the first floor of Security Bank's headquarters in Kansas City, Kansas. In the course of reading the file documents, the attorneys discovered an opinion letter from Mr. Henry's law firm, McDowell, Rice & Smith, to Security Bank relating to RFD business. In addition, they uncovered an FDIC Examination Report on Security Bank and various invoices from McDowell, Rice & Smith for legal services performed on behalf of the Bank relating to RFD. Upon discovering these documents, the attorneys asked Ms. Egmatic to make copies of the items for them to use in the Rule 2004 examination the following day. Of course, Ms. Egmatic furnished the copies.

### The Rule 2004 Examination and Mr. Henry's Objection

As planned, the Rule 2004 examination took place on June 4, 1996. James S. Lewis, President of Security Bank, was the designated witness. The attorneys present were Chris Henry for the Bank, Robert Maclin and Norman Beal for National Tour, and Robert Hiatt for the Kansas Attorney General. During examination of Mr. Lewis, National Tour's counsel attempted to question him about the opinion letter. Mr. Henry promptly objected and instructed Mr. Lewis not to answer any questions about the letter. Mr. Henry then asked National Tour's counsel how they had obtained the ostensibly privileged document. Upon learning that the letter, the attorney fee statements, and the FDIC Examination Report had been erroneously delivered with the other documents, Mr. Henry insisted that none of the documents be used during the Rule 2004 examination and that they be returned to the Bank. Ultimately, National Tour's attorneys and Mr. Hiatt agreed not to copy or use the disputed documents pending resolution of a Motion for Protective Order to be filed by Mr. Henry. The contested documents have been submitted *in camera* in sealed envelopes.

There is no dispute that the opinion letter and the attorney fee statements are confidential communications that fall within the scope of the attorney-client privilege. National Tour and the Attorney General have not argued otherwise; rather, they contend the privilege has been waived by delivery of the documents to counsel during the production stage of the Rule 2004 examination.

Mr. Henry initially claimed protection for the FDIC Examination Report on the ground that it was a confidential document under the Code of Federal Regulations, 12 C.F.R. § 309.5(c)(8). However, he no longer makes that claim because the FDIC has consented to disclosure of the report.

### Log Discussion

At the beginning of the evidentiary hearing on the Motion for Protective Order on September 19, 1996, National Tour's counsel hand-delivered a trial brief to the Court and opposing counsel. In the brief, National Tour argues that Security Bank waived its privilege claim because as of that date, Mr. Henry had still not provided a privilege log to opposing counsel. To National Tour Association, this fact raised suspicion that Security Bank would never have given it a privilege log if the overlooked documents had not come to light.

Before trial, the Court read the cases involving inadvertent disclosure of privileged material that had been cited in the pretrial briefs: *Hartford Fire v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985); *Wyoming Tight Sands Antitrust Cases,* 1987 WL 93812 (D.Kan. Sept. 11, 1987); *Kansas City Power & Light Company v. Pittsburg & Midway Coal Mining Company,* 133 F.R.D. 171 (D.Kan.1989); *Monarch Cement Company v. Lone Star Industries, Inc.,* 132 F.R.D. 558 (D.Kan.1990); *Steele v. First National Bank,* 1992 WL 123818 (D.Kan. May 26, 1992). These pre-1993 cases recognize a five-prong test for determining whether an inadvertent disclosure constitutes waiver of a privilege. However, they do not discuss waiver of a privilege by failure to provide a privilege log. Fed.R.Civ.P. 26(b)(5) was added to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure in 1993. It establishes a procedure that not only protects privileged information, but also protects against withholding non-privileged information:

(5) *Claims of Privilege or Protection of Trial Preparation Materials.* When a

party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.[3]

The Advisory Committee note to this rule suggests that sanctions and waiver are possible consequences of failing to furnish the log:

> A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and *may be viewed as a waiver of the privilege or protection.*[4]

A provision similar to Rule 26(d)(5) has existed since December 1, 1991, under Fed. R.Civ.P. 45(d)(2), the Subpoena rule:

> (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Federal Rule of Bankruptcy Procedure 9016 makes Fed.R.Civ.P. 45 applicable to cases under the Bankruptcy Code. Rule 2004 makes explicit reference to Rule 9016, thus incorporating a privilege log requirement where documents are requested by subpoena duces tecum incident to a Rule 2004 order. The question before the Court arose under a Rule 2004 Order, but no subpoena duces tecum was issued.

In oral argument, the Bank assumed that the privilege log requirement of Fed.R.Civ.P. 26(b)(5) did not apply to this dispute. It

reasoned: Fed. R. Bankr.P. 7026 applied only in adversary proceedings. The Rule 2004 exam in which the discovery dispute arose was not an adversary proceeding; therefore, Rule 7026 did not apply. This view overlooks Rule 9014, which makes Rule 7026 applicable to bankruptcy contested matters. By the end of trial, the Court had not yet examined National Tour's hand-delivered trial brief, but was concerned, as was National Tour, about the absence of a privilege log, and about the absence of any cited authorities on the legal effect of failing to provide such a log. At the conclusion of the evidence, the Court therefore asked counsel to furnish post-trial briefs on: (1) whether Fed. R.Civ.P. 26 applies to the proceeding through Bankruptcy Rule 9014 and (2), if so, what effect, if any, the 1993 addition of Fed. R.Civ.P. 26(b)(5) has on the waiver question.

In compliance with the Court's request, both sides filed simultaneous post-trial briefs on October 18, 1996. Attached to Security Bank's post-trial brief was a privilege log showing for the first time that it had withheld 46 documents as protected from disclosure.

In oral argument, Security Bank avoided Fed.R.Civ.P. 26(b)(5) by suggesting that the Court was not considering an adversary proceeding. But, when faced with Bankruptcy Rule 9014 making all of Rule 26, including the privilege log requirement, applicable in contested matters, Security Bank was forced to argue in its post-trial brief that not only is this proceeding not an adversary, it is not a contested matter. Rather, the argument goes, it is a discovery proceeding so Rule 9014 does not apply.

■ The Court does not agree. The proceeding arose by a motion to obtain a Rule 2004 Order. Rule 9014 provides: "In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion .... and, unless the court otherwise directs, the following rules shall apply: ... 7026...." Except to say that relief in contested matters should be requested by motion, the quoted statement

---

**3.** Fed.R.Civ.P. 26(b)(5).

**4.** Fed.R.Civ.P. 26(b)(5) advisory committee's note. (Emphasis added.)

does not define "contested matter." It implies, however, that a bankruptcy dispute is a contested matter unless it is presented in a procedural form otherwise governed by the rules. The only other procedural form of dispute presentation in the rules is an adversary proceeding under Fed. R. Bankr.P. 7001. This dispute is not one of the adversary proceedings listed in Rule 7001. The Code and the Rules do not provide any other procedural form for resolving disputes and certainly the purpose of the Rule 2004 examination is to advance the administration of the estate, the resolution of claims, or the liquidation of the estate, core functions under 28 U.S.C. § 157(b)(2)(A), (B), and (O), respectively. The Court concludes that this dispute is a contested matter to which Fed.R.Civ.P. 26(b)(5) applies through Fed. R. Bankr.P. 9014.

■ As previously noted, the legislative history under Rule 26(b)(5) suggests that withholding discovery materials without producing a privilege log could subject a party either to sanctions or to waiver of a privilege claim. In its post-trial brief, Security Bank cites *First Savings Bank, F.S.B. v. First Bank System, Inc. and First Bank, F.S.B.*, 902 F.Supp. 1356 (D.Kan.1995), a case that arose after the addition of Rule 26(b)(5) to the procedure code. In *First Savings Bank*, Judge Crow held that failure to provide a privilege log did not constitute a waiver of the attorney-client privilege under the facts presented. In so holding, he stated that waiver of the attorney-client privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct and bad faith in responding to discovery requests. Judge Crow noted that some courts have adapted factors used in inadvertent waiver cases to cases of failure to provide a privilege log: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of disclosure; and (5) the overriding issue of fairness. But each case is decided on its own facts, and the presence or absence of any one or more of these factors does not

compel a particular result. In the light cast by *First Savings Bank* on the facts here, the Court believes that Security Bank has not waived its attorney-client privilege as to the opinion letter and the attorney fee statements by failing to provide a privilege log.

Under the five-point test used in inadvertent disclosure cases, the precautions Mr. Henry took to prevent inadvertent disclosure were reasonable under the circumstances. Security Bank's files consisted of 15 to 20 folders four to five inches thick containing documents paper-clipped together between dividers and held in place by fasteners threaded through holes punched in the tops of the documents. Obviously Mr. Henry faced a formidable task if he were required to remove those documents from the file folders personally. He would have had to undo the top attachment, remove the papers, and reattach the fastener, a process that would greatly increase the time he spent on the project. He elected instead to mark the relevant documents with binder clips and allow Susan Egmatic the task of removing the documents from the files. This procedure, designed to accomplish the job in the least amount of time and still maintain the integrity of the Bank's files, is not an unreasonable approach to preventing inadvertent disclosure.

National Tour relies on *Hartford Fire* [5] to argue that Security Bank did not use adequate efforts to prevent inadvertent disclosure. However, *Hartford Fire* is distinguishable from this case. In that case, the attorney did not review the documents prior to their disclosure. Rather, the attorney relied on a non-lawyer to determine which of the documents were privileged and to remove them from the files.[6]

The time Mr. Henry took to rectify the error, once it was discovered, could not have been improved upon. National Tour has conceded that at the Rule 2004 examination, Mr. Henry objected immediately upon learning that privileged documents had been erroneously disclosed. This action on his part satis-

---

5. *Hartford Fire v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985).

6. 109 F.R.D. at 331.

fies the requirement that the error be promptly rectified once it is known.

The scope of discovery was large enough to permit overlooking several documents. Mr. Henry had to spend a whole day reading the contents of 15 to 20 bank files that were four to five inches thick. He testified that he has no recollection of seeing the disputed documents during his review. Oversights of this sort could easily occur in light of the number of documents and the manner in which they were attached in the files.

The extent of disclosure was limited to the attorneys conducting the discovery examination. The two principal considerations under the extent-of-the-disclosure test are the number of people with access to the privileged documents and their reliance on the disclosure. *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.*, 133 F.R.D. 171 (D.Kan.1989). The number of people with access here was limited to the attorneys present at the Rule 2004 examination, and the reliance on the documents was limited to their use of the documents in a Rule 2004 examination one day after production. While National Tour argues that the presence of counsel from the Kansas Attorney General's office makes the disclosure so extensive as to override the otherwise limited scope of the disclosure, National Tour's argument ignores the practical realities of the situation. Mr. Hiatt was present at the Rule 2004 examination at the invitation of counsel for Security Bank. He was an attorney representing a party with a legitimate interest in the documents produced. The presence of interested counsel at a Rule 2004 examination is a common practice that fosters economy in litigation.

In light of the special status of the attorney-client privilege in our adversary system, there is no unfairness in not finding a waiver. As stated in *Hartford Fire*, "[D]isclosure to the adverse party is inherently inconsistent with the adversary system."[7] Neither National Tour nor the Kansas Attorney General

have presented any facts showing that they have been unfairly dealt with. Under these conditions, there is no unfairness in permitting the claim of privilege that would otherwise have been a matter of right. The Court concludes that the inadvertent disclosure of the privileged communications and the failure to provide a privilege log did not result in waiver of the privilege.

Security Bank did withhold 46 documents as privileged from June 3, 1996, until it filed its post-trial brief on October 18, 1996, a period of four and one-half months. During that time it failed to provide a privilege log, although the Rule 2004 Order itself had appended to it "Definitions & Instructions" that included notice of the privilege log requirement:

> If any Document designated herein is withheld under a claim of privilege, the Deponent shall furnish a list which identifies each Document for which a privilege is claimed and which provides as to each such Document the following information:
>
> A.   The date of that Document;
>
> B.   The identity of each person who signed, prepared or sent that Document;
>
> C.   The identity of each person to whom that Document was addressed or by whom that Document was received;
>
> D.   The identity of each person having possession, custody or control of that
>
> Document or any copy thereof;
>
> E.   The subject matter of that Document; and
>
> F.   The basis upon which the privilege is claimed.[8]

This notice coupled with the long standing practice, reflected in Fed.R.Civ.P. 45, of providing opposing counsel with a list of documents claimed as privileged or otherwise protected makes Security Bank's omission disconcerting. Without such privilege claim, thereby permanently denying them access to documents that may have been improperly withheld.

---

7.   109 F.R.D. at 328.

8.   Schedule I, Definitions and Instructions, appended to Order for 2004 Examination of Designated Representative of Security Bank of Kansas

City by National Tour Association, Inc. and Production of Documents by Security Bank of Kansas City to National Tour Association filed May 24, 1996, at 5.

Perhaps Security Bank justifies its neglect of duty with its belief that the Rule 26 log requirement applied only to adversary proceedings, not to this contested matter. Seeing the weakness in this argument when confronted with Rule 9014's incorporation of Rule 26, the Bank may have decided to produce the log, which it attached to its post-trial brief. Although Security Bank's conduct does not rise to the level of a privilege waiver, it could justify imposition of money sanctions. Since there was no request for this form of sanction (perhaps because National Tour felt such a request would weaken its waiver argument), the Court gives Security Bank the benefit of the doubt on its failure to produce a log for four and one-half months.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.