No. 82,353

CYPRESS MEDIA, INC. d/b/a THE KANSAS CITY STAR, *Appellee,* v.
CITY OF OVERLAND PARK, KANSAS, *Appellant.*

(997 P.2d 681)

408

Opinion filed January 28, 2000.

*J. Nick Badgerow,* of Spencer Fane Britt & Browne LLP, of Overland Park, argued the cause, and *Eric W. Smith,* of the same firm, was with him on the brief for appellant.

*Timothy K. McNamara,* of Kansas City, Missouri, argued the cause, and *W. Joseph Hatley* and *Jason M. Sneed,* of Lathrop & Gage L.C., of Overland Park, were with him on the brief for appellee.

*Donald L. Moler, Jr.,* general counsel, and *Kimberly A. Gulley* and *Larry A. Kleeman,* were on the brief for *amicus curiae* League of Kansas Municipalities.

*Paige A. Nichols,* of Lawrence, and *James F. Vano,* of Overland Park, were on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

*J. Steven Pigg,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

LARSON, J.: This is an interlocutory appeal by the City of Overland Park (City) from an order requiring it to make available to Cypress Media, Inc. d/b/a The Kansas City Star (Star) unredacted copies of its 1996 attorney billing statements from outside counsel following a request by the Star under the Kansas Open Records Act (KORA or Act), K.S.A. 45-215 *et seq.* The appeal raises substantial first impression questions concerning exemptions from production under the Act, the attorney-client privilege, the work-product doctrine, and the application of privilege logs. The request for an interlocutory appeal was granted by the Court of Appeals pursuant to K.S.A. 60-2102(b), and the appeal was transferred to this court as allowed by K.S.A. 20-3017.

*Factual background*

Although the parties disagree as to the legal effect of their actions in this case, the facts giving rise to the litigation and the proceedings resulting in this appeal are largely undisputed.

As a municipal corporation organized under the laws of Kansas, the City is a "public agency" within the meaning of K.S.A. 1998 Supp. 45-217(e)(1), is generally subject to the provisions of the KORA, K.S.A. 45-215 *et seq.,* and is entitled to the benefits of the exceptions from disclosure contained in K.S.A. 1998 Supp. 45-221. This litigation and appeal relate to the billing statements submitted by outside legal counsel in private law firms employed by the City in litigation or other specialized legal matters.

Preliminary to this litigation, the Star had requested the opportunity to inspect all billing statements submitted for 1996 legal services by outside law firms representing the City. The City had indicated that while it would make the billing statements available, it would redact or mask portions of each bill claimed to be exempt under the "the attorney-client privilege, the attorney work product doctrine or other reason." The City made available summaries of the billings showing the case or subject matter, the name of the law firm, the time spent, attorney fees, expenses billed, the total amount billed, and the month in which the work was performed.

Deeming this offer insufficient, the Star sued the City seeking a declaratory judgment that the billing statements and descriptive information contained therein were not privileged communications or attorney work product, or alternatively for the court to declare the extent to which individual entries might be exempt from disclosure. An injunction was sought ordering billing statements to be presented for inspection except those found to be exempt as the court might find after an in camera inspection. The City's refusal to allow inspection of the documents was claimed to be in bad faith without reasonable basis in fact or law, entitling the Star to receive fees and costs under K.S.A. 45-222(c).

In its answer, the City essentially contended it acted in good faith and complied with K.S.A. 1998 Supp. 45-221(d) and claimed the documents sought were not open for inspection due to the exclusions of K.S.A. 1998 Supp. 45-221(a)(1), (2), (4), (10), (11), (14), (20), and (25).

The litigation proceeded to cross-motions for partial summary judgment on the limited issue of whether every narrative description of every service performed by an attorney, as set forth in the attorney billing statements, was per se subject to either the attorney-client privilege or work-product doctrine. The Star contended the documents were not per se privileged and requested an order for the trial court to make an in camera inspection and provide the Star with a general description of the redacted information so it could assess the legitimacy of the claimed privilege.

The City's response sought summary judgment on the same issue, noting that other claimed exemptions were not the subject of the motions. The City asked the court to deny the Star's request for an in camera review and to only consider such request if the per se privilege was not found to exist.

In ruling on the motions, the court found the documents were public records within the meaning of the Act, not per se privileged or exempt from disclosure, and that the only question remaining was whether they were subject to the attorney-client privilege or the work-product doctrine. The trial court held the exemptions were to be narrowly construed and the City had the burden of proving the exemptions. The trial court found that communications

between a lawyer and client are privileged only if made for the purpose of giving or receiving legal advice.

To assist in determining the extent of the claimed exemptions, the City was ordered to prepare and present to the court and opposing counsel within 21 days a privilege log, giving detailed specifications as to the basis for each privilege claimed, prepared in accordance with Federal Rule of Civil Procedure 26(b)(5) and under "the guidelines announced in *High Plains Corp. v. Summit Resource Mgmt.*, 1997 W.L 109659, *1 (D. Kan. Feb. 12, 1997); *Jones v. Boeing Co.*, 163 F.R.D. 15 (D. Kan. 1995); *Miner v. Kendall*, 1997 WL 695587, *1 (D. Kan. Sept. 17, 1997); and *Bennet v. Fieser*, 1993 WL 566202, *2 (D. Kan. Oct 26, 1993)."

Although the specific language of the trial court's order is not fully set forth in the journal entry, the court at the time of ruling stated:

"[T]he standard for testing the adequacy of a privilege log is whether, as to each document, it sets forth specific facts that if credited would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log and not on the conclusory invocations of the privilege . . . since the burden of the party withholding documents cannot be discharged by mere conclusory . . . assertions. When a party invoking the privilege does not provide sufficient detail to demonstrate the fulfillment of all the legal requirements for application of the privilege, the claim of privilege will be restricted."

The trial court further stated that the parties should not expect that a lack of completeness in the log would be remedied by the court doing an in camera inspection and that, while such an inspection might ultimately be required, the log would permit a more intelligent determination of what is and is not subject to privilege. Any documents or billing statements as to which no claim of privilege was made were ordered to be produced for the Star.

In asking for guidance, counsel for the City stated that it was his understanding the federal rule would only require identification of the document while the court seemed to be asking for descriptions of each entry for each day, which was not required by the federal rule. The Star's counsel responded that the log would not be meaningful unless prepared line-by-line because application of privilege

might vary by entry or even by parts of each entry in each document. The court responded that a blanket claim of privilege would not be sufficient and that the court was rejecting the contrary holdings in *In re Horn*, 976 F.2d 1314 (9th Cir. 1992); *In re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982); or *Weeks v. Samsung Heavy Industries, Inc.*, 1996 WL 288511 (N.D. Ill., May 30, 1996), because not every communication is privileged, only those constituting the giving or receiving of legal advice. The court gave examples of narrative that would not be privileged, including: "notice of a hearing" and "preparation of a notice of hearing." The court reiterated that it was up to defense counsel to explain in the privilege log how the privilege applied in each instance and stated: "If it has to be line-by-line—counsel, I can't tell you how to try your lawsuit and how to assert your claim of exemption here. And if it has to be line-by-line, it's going to have to be line-by-line. But I think we've got to have a starting point, and I think that's the only starting point that we can have."

The trial court declined the City's request that the court certify for interlocutory appeal the ruling that not every narrative statement in the billing documents was per se privileged.

In response to the court's order, the City produced 1,138 pages of materials consisting of an introductory memorandum with nine attachments, including letters, newspaper articles, resolutions of the council, as well as every billing statement at issue in the case with all the narrative descriptions of work performed redacted. The first portion of the privilege log repeated all of the City's previous arguments that narrative descriptions in attorney billing records are privileged in their entirety and stated that the City's position with respect to each claimed privilege allowed it to withhold the narrative portions of the documents. Numbers were written on the top of each document designating the privileges claimed and a key to the numbers was provided which cited and quoted the statutory subsections relied upon. The City also argued that the definition of privileged communications included any and all communications between the lawyers and not just those given for the purpose of giving or seeking legal advice.

In response to the privilege log submitted, the Star filed a motion contending the log was not in accordance with the court's clear instructions and that the City should be deemed to have waived any claim of privilege and compelled to produce for the Star unredacted copies of all of the billing statements. At a hearing on the motion, the City countered that it had complied with the court's order and that even if the log was deemed inadequate, a finding that the City had waived the privilege would be unwarranted.

The trial court observed that the case was unique from the usual privilege log situation because, here, it was what was contained in the documents rather than the documents themselves that was the "real battleground" of the suit. The court found that the City's act of simply identifying the document and stating the privilege amounted to nothing more than a blanket claim which did not meet the City's obligation. The court acknowledged the City's continued stance that all of the narrative descriptions were privileged but stated the log was insufficient to comply with the order or even allow a guess as to whether a proper exemption existed. The trial court held that it had clearly required a line-by-line analysis which had not been furnished and it granted the Star's motion compelling the City to give the Star unredacted copies of all the 1996 attorney fee billing statements of outside counsel.

The trial court certified its ruling for interlocutory appeal and ordered a stay pending an outcome on appeal. The Court of Appeals granted the City's request to take an interlocutory appeal. A notice of appeal was properly filed. We granted the City's motion to transfer.

*Our court has jurisdiction to hear all issues raised by the City's interlocutory appeal.*

We have jurisdiction to hear an interlocutory appeal of a trial court order under K.S.A. 60-2102(b) where the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

In contending we are without jurisdiction over any aspect of this appeal, the Star first argues there are no controlling questions of law in this case. Because the trial court refused to certify for an interlocutory appeal the July 24, 1998, order which held that billings statements were not pe se privileged, the Star contends the order requiring production of unredacted billing statements due to insufficiency of the privilege log is discretionary in nature and not subject to our review.

The City more convincingly argues that the transcript of the hearing on the Star's motion to compel the City to produce unredacted billing statements due to its failure to produce a proper privilege log reveals that the trial court necessarily revisited and reaffirmed its earlier ruling on the per se issue and that the trial court's final order of production was a reaction to the City's continued claim of an absolute privilege. The trial court stated that while it had ruled that not all entries of billing statements are privileged this remained an issue for an appellate court to determine.

With the right to appeal being statutory, it is well established that this court has only such appellate jurisdiction as is provided by law. *In re J.B.D.*, 259 Kan. 872, 874, 915 P.2d 69 (1996). Further, whether jurisdiction exists is a question of law over which our court's scope of review is unlimited. *State v. Snelling*, 266 Kan. 986, 988, 975 P.2d 259 (1999). We previously held in *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 757, 675 P.2d 887 (1984), that an interlocutory appeal may be taken only from an issue actually decided and may not be taken from issues not decided by the trial court.

The City relies on *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205, 133 L. Ed. 2d 578, 116 S. Ct 619 (1996), where the Supreme Court considered 28 U.S.C. § 1292 (1994), a federal statute substantially identical to K.S.A. 60-2102(b). The Court concluded that in an interlocutory appeal, the appellate court may review any issue fairly included within the certified *order* because it is the order which is certified rather than the district court's formulations of issues. A review of the *Yamaha* decision shows that if the per se ruling was encompassed within the later ruling in this

case on the Star's motion which was certified, a clear question of law exists for our determination in this appeal.

Although the subject of the hearing on the Star's motion to compel was the requested production of the unredacted copies because of the failure of the City to provide an adequate privilege log, intertwined in that controversy was the City's continued insistence, restated in the privilege log, that the narratives in the attorney fee billing records remained per se privileged.

After ruling the City had failed to meet its burden of proving the claimed privileges, and ordering production of the unredacted statements, the trial court stated that the application of the Act in this case was an issue ripe for determination by an appellate court.

The City also argues that where an appealable issue is inextricably intertwined with other issues that might be considered nonappealable, both may be reviewed to allow meaningful review and promote judicial economy. In making this argument, the City relies on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 (11th Cir. 1997), where an order that was not otherwise properly before the court was decided because it was inextricably intertwined with the appealable order and necessary to resolution of the ultimate question presented. See *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1010 (10th Cir. 1998).

While we have no Kansas case which appears to deal directly with this issue of pendant interlocutory jurisdiction, we did in *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989), accept an interlocutory appeal on an issue regarding abuse of discretion in the disqualification of an out-of-state attorney and considered other questions.

In either event, the broader per se privilege issue was at the heart of and inextricably intertwined with the privilege log issue which has the effect of resolving the ultimate issue in this case. We hold that jurisdiction exists to consider the per se issue as well as the trial court's ruling regarding the privilege log.

*Are narrative statements in attorney billing statements per se exempt from production under the attorney-client privilege or work-product doctrine exceptions to the Kansas Open Records Act?*

Although this appeal involves exceptions to the KORA, it is of prime importance to focus on the overriding public policy of the Act, which is set forth in K.S.A. 45-216(a) as follows: "It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and *this act shall be liberally construed and applied to promote such policy.*" (Emphasis added.)

Our legislatively directed duty has been previously recognized by our court in *State Dept. of SRS v. Public Employee Relations Board,* 249 Kan. 163, 166, 815 P.2d 66 (1991), where we stated: "The interpretation of KORA is a question of law and it is our function to interpret the Act to give it the intended effect." We went on to set forth our duty in the following manner:

"The Kansas Open Meetings Act, K.S.A. 75-4317 *et seq.,* and KORA were passed by the legislature to insure public confidence in government by increasing the access of the public to government and its decision-making processes. This increases the accountability of governmental bodies and deters official misconduct. The public policy stated in KORA is that all records are 'open for inspection by any person unless otherwise provided by this act.' K.S.A. 45-216(a). The burden of proving that an item is exempt from disclosure is on the agency not disclosing. K.S.A. 45-218.

". . . The stated policy of KORA is that all public records are to be open to the public for inspection unless otherwise provided by the Act. As used in KORA 'public' means 'of or belonging to the people at large.' 'Public inspection' refers to the right of the public to inspect governmental records when there is a laudable object to accomplish or a real and actual interest in obtaining the information." 249 Kan. at 170.

See *Southwest Anesthesia Serv., P.A. v. Southwest Med. Ctr.,* 23 Kan. App. 2d 950, 951, 937 P.2d 1257 (1997).

With our legislatively directed duty firmly in mind we recognize that K.S.A. 1998 Supp. 45-221(a) sets forth numerous exceptions from disclosure under the Act. The two which are in issue in this case are the following:

"Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:

(1) Records the disclosure of which is specifically prohibited or restricted by federal law, state statute or rule of the Kansas supreme court or the disclosure of which is prohibited or restricted pursuant to specific authorization of federal law, state statute or rule of the Kansas supreme court to restrict or prohibit disclosure.

"(2) Records which are privileged under the rules of evidence, unless the holder of the privilege consents to the disclosure."

The manner in which a particular exemption under the Act is to be applied is a question of law over which we have unlimited review. The burden of proving the applicability of an exemption is on the public entity opposing disclosure. Meeting this burden requires more than generalized allegations, conclusory language, or mere arguments of counsel; a sufficiently detailed record must be provided to show the reasons why a claimed exemption applies to the materials requested. 23 Kan. App. 2d 950, Syl. ¶ 2.

With this background we turn to the exceptions claimed by the City in this case.

A. *Attorney-Client Privilege*

As we have previously shown in setting forth K.S.A. 1998 Supp. 45-221(a)(2), if the records are privileged under rules of evidence and not consented to by the holder of that privilege, disclosure is not required. The City claims application of the claimed attorney-client privilege which is codified in Kansas by K.S.A. 60-426. That statute provides in applicable part:

"(a) *General rule.* Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege . . . (2) to prevent his or her lawyer from disclosing it . . . .

"(b) *Exceptions.* . . .

"(c) *Definitions.* As used in this section . . . (2) 'communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship."

While the privilege is subject to K.S.A. 60-437, that section deals with waiver of the privilege by contract or previous disclosure. Neither is applicable to our case. Nor do the exceptions of subsection 60-426(b) apply.

We first consider the extent of the privilege. The Star asserts that the attorney-client privilege applies only to communications made for the specific purpose of giving or receiving legal advice, whereas the City argues there is no such limitation on the privilege

and that it applies to every interaction between attorney and client. While cases and statements can be found to support both views in assessing the extent of the privilege in this case, we are primarily mindful that this is an open records case where the public policy of openness has been legislatively stated and where we have been directed to liberally construe the Act to promote such a policy.

We note the pronouncement of Professor Wigmore that "because the 'benefits [of the privilege] are all indirect and speculative [and] its obstruction is plain and concrete . . . [the privilege] ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.' " Rice, 1 Attorney-Client Privilege in the United States § 2:3 (2d ed. 1999) (quoting 8 Wigmore, Evidence § 2291 [McNaughton rev. ed. 1961]). In doing so, we remain mindful that "the attorney-client privilege is so sacred and compellingly important that the courts must, within their limits, guard it jealously." *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984) (citing *Chore-Time Equipment, Inc. v. Big Dutchman, Inc.*, 255 F. Supp. 1020, 1021 [W.D. Mich. 1966]).

In *Fisher v. United States*, 425 U.S. 391, 403, 48 L. Ed. 2d 39, 96 S. Ct. 1569 (1976), a case dealing with enforcement of summonses served on attorneys to produce documents given them by the client's accountants, it was stated that the privilege "applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege. [Citations omitted.]"

The manner in which we consider the attorney-client privilege in Kansas was the subject of *State v. Maxwell*, 10 Kan. App. 2d 62, 63, 691 P.2d 1316 (1984), *rev. denied* 236 Kan. 876 (1985), where the rule was summarized as follows:

"(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived. See 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961)."

It was stated in 24 Wright & Graham, Federal Practice and Procedure, § 5473, pp. 103-04 (1986) that although the organization of the rules in Wigmore has its virtues, "there is some question as to whether it completely states the modern privilege." The modern privilege is discussed in 1 McCormick on Evidence § 87, p. 346 (5th ed. 1999) in this manner:

"At the present time it seems most realistic to portray the attorney-client privilege as supported in part by its traditional utilitarian justification, and in part by the integral role it is perceived to play in the adversary system itself. Our system of litigation casts the lawyer in the role of fighter for the party whom he represents. A strong tradition of loyalty attaches to the relationship of attorney and client, and this tradition would be outraged by routine examination of the lawyer as to the client's confidential disclosures regarding professional business."

With this discussion in mind, it is difficult for either the arguments of the Star or the City to be precisely adopted. However, the fact the communication must have been for the giving or receiving of legal advice appears to have been the underlying basis for the decision of our Court of Appeals in *State v. Breazeale,* 11 Kan. App. 2d 103, 713 P.2d 973 (1986). The court considered the definition of "communication" in the attorney-client privilege statute in order to decide whether an attorney's communication to his client that the client was to appear in court on a certain day was a communication protected by the privilege. The attorney had been contacted by the court and told that the attorney and his client were to come to court for the reading of the verdicts. When the defendant was charged with the crime of failing to appear, the question was whether the attorney could testify that he had, in fact, conveyed the information to his client.

The court concluded that the definition of communication was not limited to the two examples given in K.S.A. 60-426(c) because that subsection only says "includes" and because a definition limited to what is described in subsection (c) would exclude, *inter alia,* communications from client to lawyer as opposed to lawyer to client—a result that could not have been intended. The *Breazeale* court then cited *State v. Newman,* 235 Kan. 29, 40, 680 P.2d 257 (1984), as holding that the statutory definition of the term "communication" in the lawyer-client privilege statute "means a state-

ment transmitting information between a lawyer and his client."
11 Kan. App. 2d at 105. The court also noted that the privilege
"protects confidential communications, that is, communications
between a lawyer and his client made in professional confidence.
That is the essence of K.S.A. 60-426(a). [Citations omitted.]" 11
Kan. App. 2d at 105. Based on this, the court concluded that the
attorney's transmission to the client of the court appearance infor-
mation was not a communication made in professional confidence
because the attorney was simply performing a notice function as
an officer of the court or was merely acting as a conduit for the
notice.

In *Newman*, 235 Kan. 29, our court considered whether a wife's
observation of the physical actions of her husband constituted con-
fidential communications subject to the marital privilege. Because
the marital privilege statute used the term *confidential communi-
cations,* the court considered whether that phrase could be con-
strued to apply to observance of physical actions as distinguished
from words. The court looked at the phrase in the attorney-client
privilege context, emphasized the words "advice" and "disclosures"
in the statutory definition of attorney-client privilege, and viewed
these terms as indicating that communication means a transmission
of information between the attorney and the client.

The City criticizes *Maxwell's* summary and the federal cases that
have relied on it to find that the communication must involve the
giving or receiving of legal advice to qualify for the privilege. How-
ever, in *State v. Munyon*, 240 Kan. 53, 58, 726 P.2d 1333 (1986),
we approved of and quoted the definition of attorney-client privi-
lege found in *Maxwell*, 10 Kan. App. 2d at 63. Later in *Wallace,
Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*,
250 Kan. 54, 824 P.2d 933 (1992), we considered whether a trial
court had abused its discretion in ordering a law firm to produce
all written communications between itself and its clients. The firm
argued that all the documents fell within the attorney-client priv-
ilege. Quoting the Court of Appeals case which, in turn, cited *Max-
well*, 10 Kan. App. 2d at 63, we stated: " 'The attorney-client priv-
ilege applies only to communications made to an attorney in his
capacity as a legal advisor.' " 250 Kan. at 60.

We reject the City's contention that the attorney-client privilege applies to every interaction between attorney and client. We likewise hesitate to adopt unqualifiedly the Star's argument that the privilege exists only where advice is given or received, although such position appears to be more consistent with our prior pronouncements. The facts under which the attorney-client privilege may be claimed will necessarily differ in most cases, so any attempt to adopt a bright-line rule is inadvisable. Our statements that the attorney-client privilege attaches to communications related to the giving or receiving of legal advice does not add any element to the statutory definition but rather is an aid in its interpretation and explanation.

We will not attempt to detail or analyze each case cited by either party on the issue of the extent to which the privilege applies to attorney billing statements, as there appears to be no universal rule on this point. Several of the cases cited by the City, *In re RFD, Inc.*, 211 B.R. 403, 406 (Bankr. D. Kan. 1997), *Sage Realty Corp. v. Proskauer Rose L.L.P.*, 251 A.D.2d 35, 675 N.Y.S.2d 14 (1998), and *Teich v. Teich*, 245 A.D.2d 41, 665 N.Y.S.2d 859 (1997), are readily distinguishable. *In re RFD* involves mere dicta; *Teich* is a one-page order with no analysis; and the analysis on the attorney-client privilege issue in *Sage Realty* is likewise too brief and conclusory to provide adequate support.

Two 9th Circuit cases cited by the City, *In re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982), and *In re Horn*, 976 F.2d 1314 (9th Cir. 1992), are more analytical. These cases conclude that information regarding client identity and the amounts and form of payment for legal services would not disclose a confidential communication, but that billing records describing the services performed for a client and the time spent on those services "may reveal the client's motivation for seeking legal representation, the nature of the services provided or contemplated, strategies to be employed in the event of litigation, and other confidential information exchanged during the course of the representation." The cases further conclude that the demand for such documents constitutes an unjustified intrusion into the attorney-client relationship. *Horn*, 976 F.2d at 1317-18; see *Grand Jury Witness*, 695 F.2d at 362.

*Grand Jury Witness,* 695 F.2d at 362, concluded that bills and statements that reveal the nature of the services provided, such as researching particular areas of law, should fall within the privilege. These cases also seem to disapprove of a privilege log approach of requiring individuals to provide descriptions of particular documents for which a privilege is claimed, emphasizing instead that the proper approach is for the trial court to view the materials in camera. 976 F.2d at 1318; 695 F.2d at 362. But see *Clarke v. American Commerce Nat. Bank,* 974 F.2d 127, 130 (9th Cir. 1992) (finding no implication in *Grand Jury Witness* that a trial court is prohibited from requiring a line-by-line explanation in a privilege log).

Although *U.S. v. Gonzales,* 150 F.3d 1246 (10th Cir. 1998), *cert. denied* 119 S. Ct. 918 (1999), related to whether certain information (including billing statements) was protected by the attorney-client privilege, the legal and factual background of *Gonzales* is materially different from ours. The request for access to the documents in *Gonzales* was made under the First Amendment, the common law, and the Criminal Justice Act. The analysis there is unique and we do not deem *Gonzales* helpful in our case.

Most of the federal and state cases relied on by the Star largely conclude that where the narrative descriptions in billing statements provide only general descriptions of the nature of the services performed and do not reveal the subject of confidential communications with any specificity, they are not privileged. See *e.g., Clarke,* 974 F.2d at 130 where only "the general nature of the services performed" is revealed, this does not equate to a privileged communication); *Beavers v. Hobbs,* 176 F.R.D. 562, 564-65 (S.D. Iowa 1997) (where the entries simply describe what the attorney did, when, and for how much time, but do not substantively reveal or suggest the content of privileged communications, privilege will generally not apply); and *Burton v. R.J. Reynolds Tobacco Co., Inc.,* 170 F.R.D. 481, 484 (D. Kan. 1997) (a general description of the work performed by the attorney is not protected by the privilege).

In *Tipton v. Barton,* 747 S.W.2d 325 (Mo. App. 1988), newspaper reporters sought under the Missouri Open Meetings Act production of a city's itemized billing statements prepared by the

city attorney. In addition to other claims of exemption, the city argued that the statements included privileged communications protected by the attorney-client privilege and work-product doctrine. The court responded that its in camera review of the materials disclosed that

"the billing statements merely identify attorney Wohler's preparation of pleadings, phone calls, meetings, and discussions with other attorneys or individuals. The subject billing statements do not include detailed entries which advise, analyze or discuss privileged communications. The mere fact the City Attorney Wohler prepared the billing statements does not render those statements confidential. The billing statements are extraneous to Wohler's legal advice or work product. We find that the billing statements are neither privileged communications nor work product and do not fall within the attorney-client privilege." 747 S.W.2d at 332.

Most helpful to our considerations is the recent decision of *ERA Franchise Systems v. Northern Ins. Co. of N.Y.*, 183 F.R.D. 276 (D. Kan. 1998), where United States Magistrate Judge Rushfelt succinctly analyzed an issue like the one we now consider. The opinion suggests that no conflict appears to exist between federal and Kansas law, sets forth the elements of the privilege from *Maxwell* that we have quoted herein, refers to the definition of "communication" from K.S.A. 60-426(c)(2) previously quoted herein, and then quotes with approval the following statement from *White v. GMC*, 1990 WL 47437 (D. Kan. March 13, 1990):

" 'Although the court is not aware of any Kansas case definitively addressing the issue of the status of fee information *vis-a-vis* the attorney-client privilege, the general rule is that information regarding clients' fees is not protected by attorney-client privilege because payment of fees is not a confidential communication between attorney and client.

" 'The reason for this general rule is two-fold. First, fee arrangements are viewed as merely incidental to the attorney-client relationship and do not usually involve disclosure of confidential communications arising from the professional relationship. Second, because the attorney-client privilege restricts the availability of relevant information to a fact-finder, the privilege should apply only where necessary to achieve its purpose: protecting disclosures made to obtain legal advice which might not have been made absent the existence of the privilege. The court notes that the federal circuits are uniformly in accord regarding the nonprivileged status of a client's identity and attorney-client fee arrangements.' " 183 F.R.D. at 280.

*ERA* is also instructive regarding the privilege log issue we later discuss, but the decision is solid support for the decision of the trial court in our case that the narrative statements in attorney fee billing statements are not per se privileged under K.S.A. 60-426.

A recent article regarding the attorney-client privilege states: "The general rule is that information regarding attorney's fees billed to and received from or on behalf of the client and the general nature of the services rendered are not protected by the attorney-client privilege." Haydon, *Identifying and Preserving the Attorney-Client Privilege in Various Business Transactions*, 61 J.K.B.A. 24, 33 (September/October 1992). The authority for this assertion was stated to be *Tipton v. Barton*, which is discussed above and several cases which appear to relate to governmental agency's investigation of the validity of fees paid to attorneys. See *Grand Jury Proceedings Subpoena to Testify to Wine*, 841 F.2d 230 (8th Cir. 1988); *Colton v. United States*, 306 F.2d 633 (2nd Cir. 1962), *cert. denied* 371 U.S. 951 (1963); *United States v. Long*, 328 F. Supp. 233 (E.D. Mo. 1971).

The Haydon article indicates that if required to testify, the attorney is only required to divulge the general nature of the services and that "courts will blue-line billing statements to protect privileged communications." 61 J.K.B.A. at 34.

In reviewing federal law as to the general issue of protecting confidential statements, 1 Rice, Attorney-Client Privilege in the United States § 6.21 (2d ed. 1999), states: "[T]he general nature of the services performed must be identified with sufficient particularity to permit an assessment of the substantive nature of the activity, but not so specific that the substance of confidential communications are directly or indirectly revealed."

We do not agree with the City's argument that problems with waiver arise where part of the narratives or descriptions of the narratives are revealed. First, if only unprivileged information is revealed there cannot be a waiver. Second, waiver implies a voluntary act, and where a privilege is claimed, even if it is not found to be valid, waiver would not exist. See K.S.A. 60-437(b); *State v. Johnson*, 223 Kan. 237, 242, 573 P.2d 994 (1977); 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence § 4.2

(1999) (waiver of right to invoke a privilege requires knowing and voluntary disclosure).

The City also relies on the rules of professional conduct regarding client confidences. This argument is not persuasive. Those rules are not part of the statutory requirement, they bind the behavior of attorneys rather than prohibiting disclosure by clients, and their provisions are expressly not intended "to govern or affect judicial application of either the attorney-client or work product privilege." Scope, Kansas Rules of Professional Conduct (1999 Kan. Ct. R. Annot. 282).

Finally, the City makes a policy argument that clients will be less willing to communicate with attorneys and attorneys less willing to communicate with clients if such communication could be revealed in an attorney billing statement. The City also voices a concern that the task of analyzing and redacting billing statements will become burdensome on the courts and parties if a per se rule is not adopted. We reject both arguments. Attorneys have methods of communicating with clients other than in billing statements. Further, the existence of a privilege should not be determined on the difficulty or burden in identifying or proving it. The public policy behind the KORA in favor of disclosure outweighs any contrary policy argument the City makes in this case.

We affirm the trial court's ruling that all narrative statements in attorney fee statements are not per se privileged is correct. Rather, parties claiming the privilege will have to show its application to particular narrative statements in billing records. As explained by Magistrate Rushfelt in *ERA:*

"Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies. *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D. Kan. 1995). They must make a 'clear showing' that the asserted objection applies. *Ali v. Douglas Cable Communications, Ltd. Partnership,* 890 F. Supp. 993, 994 (D. Kan. 1995). To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery. *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D. Kan. 1994). They must provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied. *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995). A claim of privilege fails upon a failure of proof as to any element. *Id.* A

'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof. See *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D. Kan. 1994)." 183 F.R.D. at 278-79.

We recognize the burden this places on trial judges and litigants, but it is no different than they currently handle in huge volume in the discovery process. Whether in camera inspections are made, privilege logs required, or other methods are developed, trial courts have the necessary skills to make the required determinations.

### B. *Work-Product Doctrine*

We have previously set forth the exemption to disclosure in K.S.A. 1998 Supp. 45-221(a)(1), which brings into issue the application of the work-product rule. The work-product rule is codified at K.S.A. 1998 Supp. 60-226(b)(4), which in applicable part states:

"(4) *Trial preparation: Materials.* Subject to the provisions of subsection (b)(5), a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) and prepared in anticipation of litigation or for trial by or another party or by or for that other party's representative, including such other party's attorney, consultant, surety, indemnitor, insuror or agent, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and that such party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impression, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."

This subsection is explained in 1 Gard and Casad, Kansas C. Civ. Proc. Annot. § 60-226, pp. 187-88 (3d ed. 1997), in the following manner:

"Subsection (b)(4) is a codification of the attorney work product limitation on discovery first recognized judicially in *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 2d 451, 67 S. Ct. 385 (1947). It limits discovery of documents and tangible things prepared in anticipation of litigation or for trial. It extends the original work product limitation to documents and tangible things prepared by or for a party's representative, including not only lawyers but insurers, agents and others. However, such material can be discovered on a showing that the party seeking discovery has a substantial need for the material and cannot without undue hardship obtain the substantial equivalent by other means. A situation where the requisite showing might be made would be when one party has obtained a tape recording of an

eyewitness to the event that is the subject of the suit, but who has since died or otherwise become unavailable to the other party. It should be noted, however, that if such discovery is ordered the court is directed to protect against disclosure of the mental impressions, theories, conclusions or opinions of an attorney. If the hypothetical recording is in the form of a question and answer interview conducted by a party's lawyer, the court will probably screen the tape first to avoid disclosure of too much of the legal theories of the party who obtained the tape."

The City makes similar arguments to those made in considering the attorney-client privilege and we will not repeat any of the analysis previously made. We cannot say categorically that a situation will never exist where a narrative statement in an attorney fee billing statement might not arguably be claimed to fall under the work-product doctrine. However, we hold that the work-product doctrine does not offer a per se exemption for such billing statements under K.S.A. 1998 Supp. 45-221(a)(1). This contention of the City is without merit.

*The City of Overland Park's privilege log failed to comply with the trial court's July 24, 1998, order.*

The City argues it complied with the trial court's order regarding the content of the privilege log it submitted. We have previously stated in setting forth the factual background of this case that the trial court cited Federal Rule of Civil Procedure 26(b)(5) and gave the City specific federal cases to utilize and follow in preparing the privilege log it was ordered to submit. The federal rule states:

"**Claims of Privilege or Protection of Trial Preparation Materials**. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Although Kansas has not adopted this specific provision of the federal rules, it was not erroneous or an abuse of discretion for the trial court to require its usage in this case. While not directly applicable, we point out that the provisions of K.S.A. 1998 Supp. 60-245(d)(2) relating to subpoenas states:

"When information subject to a subpoena is withheld on a claim that such information in privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim."

The requirements to claim a privilege under either provision appear generally similar.

The cases referenced by the trial court with regard to the duty contemplated by a privilege log generally describe the following principles: The party claiming the privilege has the burden of demonstrating the existence of a privilege; the party claiming the privilege must supply the court with sufficient information to enable the court to determine that each element of the privilege is satisfied; a blanket claim of privilege is insufficient to meet the burden of proof; and failure of proof causes the privilege to fail. The trial court referred to the summary of what is required for such a log in *Bennett v. Fieser*, 1993 W.L. 566202 (D. Kan. Oct. 26, 1993), which states that the log should include: (1) a brief description or summary of the contents of the document; (2) the date the document was prepared; (3) the person or persons who prepared the document; (4) to whom the document was directed or for whom it was prepared; (5) the purpose in preparing the document; (6) the privilege or privileges asserted as to that document; and (7) how each element of the privilege or privileges is/are met as to that document.

Although not one of the cases cited by the trial court, the *ERA* wording we have previously quoted is clearly applicable to the City's duty in preparing the privilege log. Additionally, the *ERA* opinion states:

"Plaintiff has the burden to demonstrate the applicability of the attorney-client privilege. It cannot satisfy the burden by mere assertions that courts have recognized that documents similar to those requested here have the potential to contain privileged information. It must demonstrate, with evidence short of revealing privileged information, that the documents here in question contain privileged information." 183 F.R.D. at 280.

The City argues that federal cases generally only require descriptions at the level of the document rather than line-by-line

descriptions and that the City therefore complied with the principles of the cases and rule referenced by the trial court. We do not agree.

First, the rule refers to more than just documents—it refers to describing the nature of the "documents, communications, or things not produced or disclosed." Therefore, under the terms of the rule, the descriptions in a given case may pertain to the communications listed in the documents, as in this case. Second, the cases generally refer to "documents" because the usual items at stake are reports or letters, but the items being withheld in *this* case were the individual narrative entries—the duty depends on the facts of the given case. Third, the trial court was quite specific that it wanted detail as to the individual entries, and it is clear that a line-by-line explanation as to the application of the claimed privileges was what the court ordered and expected. It is equally clear that the City's memorandum accompanying its "log" implicitly expressed its disagreement with any requirement of a line-by-line log and expressed the City's continued position that the narratives were per se privileged. Finally, the City's log provided no explanation as to why a given privilege applied to a given entry but merely a blanket claim of privileges as to each page, which does not comply with the rules expressed in the cases.

The City did not comply with the court's order. As for the argument that a line-by-line logging process is too burdensome, that is a matter for the discretion of the trial court as it decides how to determine if privileges apply. In some cases an in camera inspection will be most expedient; although K.S.A. 45-222 only authorizes in camera inspection, it does not require it. See also *Clarke*, 974 F.2d at 130 (finding no prohibition against a trial court requiring line-by-line explanations in privilege log).

The trial court did not abuse its discretion in ruling that the City failed to meet its burden that a privilege existed as to its 1996 attorney fee billing statements. The memorandum accompanying the City's privilege log essentially reargued the per se issue, and the log was not sufficient for the trial court to make a meaningful and reasoned decision as to the privileges claimed.

We affirm the trial court's ruling that the privileged log submitted did not comply with its July 24, 1998, order.

*It was not an abuse of discretion for the trial court to order the City of Overland Park to produce unredacted copies of all of 1996 attorney fee billing statements.*

Although this is considerably more than a discovery or sanction case, it does have elements of both situations. In finding the privilege log was inadequate and that the City failed in its burden to prove the privilege, the trial court was relying on federal decisions where production of the document is the consequence of producing an inadequate log. The specific cases cited by the trial court refer to such an expected ruling as did the magistrate in *ERA.*

An interesting discussion of this precise question is found in Hutton, *The Privilege Log: Where the Battle Can Be Won or Lost,* 19 J.K.T.L.A. 27, 31 (July 1996), where it is stated: "Failure to submit an adequate log should arguably result in a waiver of the privilege. In this circumstance, the court should simply order the production of the documents in dispute."

If the trial court's ruling is viewed as a sanction for failing to comply with its earlier order, then the ruling was a matter within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. See *Shay v. Kansas Dept. of Transportation,* 265 Kan. 191, Syl. ¶ 1, 959 P.2d 849 (1998); *Hawkins v. Dennis,* 258 Kan. 329, Syl. ¶ 1, 905 P.2d 678 (1995); *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 676, 522 P.2d 449 (1974).

We do not attribute any bad faith to the City's actions and there is authority that a finding of waiver of the privilege for an inadequate log is unduly harsh. *Cf. Butler Mfg. Co., Inc. v. Americold Corp.,* 148 F.R.D. 275, 277 (D. Kan. 1993). But, the City appeared to have an agenda to test the per se question and not to retreat from the position it had staked out on that point, no matter the cost. Here, the cost was the ordered production of the unredacted attorney fee statements and such should have been anticipated by skillful counsel.

This may be an unusual case in that, by ordering the documents produced in their unredacted form, the court essentially granted the relief requested by the Star in its petition. This should not,

however, cause us to view the trial court's ruling as if a default judgment had been entered, because the ultimate question was forced by the Star and decided by the trial court on the basis of whether the City met its burden of proving the claimed privilege. The City had a reasonable argument and good legal basis for its per se argument, but it is disingenuous to argue it was complying with the court's order when, in reality, it was choosing not to do so.

We conclude, as we began, this is a KORA case, and we apply the principles that the Act requires. After finding the privilege log was clearly insufficient, the trial court did not abuse its discretion in ordering the City to produce unredacted copies of all of its 1996 attorney fee billing statements of outside counsel.

We have considered the arguments of *amici curiae*, and they largely repeat the arguments and concerns of the City. We do not foresee the disasters which they envision. There is no per se privilege under the facts of this case, but the attorney-client privilege remains in existence and may properly be claimed where the facts allow. We also note that this ruling is made in a civil case. The Kansas Association of Criminal Defense Lawyers raises several issues relevant in the criminal context, but those issues are not before us now.

All of the rulings of the trial court are affirmed.

SIX, J., not participating.

MARLA J. LUCKERT, District Judge, assigned.